**Laselle WILLIAMS, Plaintiff-Below, Appellant,**

v.

**WARREN BROTHERS CONSTRUCTION COMPANY, Defendant-Below, Appellee.**

Supreme Court of Delaware.

Submitted Nov. 26, 1979.

Decided Feb. 8, 1980.

Patrick Scanlon of Scanlon & Leszcz, Dover, for plaintiff-below, appellant.

Robert W. Ralston of Prickett, Sanders, Jones, Elliott & Kristol, Wilmington, for defendant-below, appellee.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

The claimant, Laselle Williams, an employee of Warren Brothers Construction Company, complained of a work related back injury in July, 1975. He was hospitalized for a short period and returned to work after approximately one month. An agreement in regard to this injury was reached calling for the payment of compensation benefits. The claimant subsequently was laid off from November, 1975 until March, 1976 because of his employer's annual winter shutdown policy.

In March, 1976 claimant suffered an alleged recurrence of the first injury while getting out of bed and filed a petition for additional compensation benefits. His employer asserted that the two injuries were unrelated, and therefore the second injury was not compensable. After a hearing, the Industrial Accident Board (Board) found the injuries to be unrelated and denied compensation. On appeal, the Superior Court determined that certain extrinsic impeachment evidence tending to negate the legitimacy of claimant's first injury, had been admitted improperly, but found the error to be harmless and affirmed. We reverse and remand.

The only issue we need to consider in this appeal is whether the Superior Court erred in determining that the Board committed harmless error in allowing the employer to produce testimony for the sole purpose of impeaching the employee's credibility by questioning the legitimacy of his claim for compensation for his original injury?

I

Before determining whether the asserted error of the Board is harmless, we must determine whether an error was made. The alleged error was allowing the introduction of extrinsic evidence, in the form of oral testimony, for the singular purpose of impeaching the appellant's credibility

through reference to prior conduct. This evidence was supplemental to the appellee's cross-examination of the appellant on the same issue. We agree with the Court below that allowing the introduction of the extrinsic evidence in this form for this purpose was error.

Specifically, James Malloy, the employer's safety director, was allowed to testify that Williams' first injury was not alleged to be job related until several weeks after the accident. Malloy alleged that, despite his inquiries, neither the claimant, nor two co-workers who car-pooled with him, said anything to indicate the first injury was job related until the claimant sought payment for lost wages and medical bills. Williams, injured on a Friday, did not go to the hospital until the following Monday morning.

Malloy characterized the claimant's conduct in seeking compensation by stating "The whole aspect of the case was different. He was not talking about a medical claim, but a workmen's compensation claim." John Carey, a foreman of the employer at the time of the first injury, also testified that no claims the injury was job related were made until weeks after its occurrence. Clearly, this testimony raised the inference that Williams had falsely claimed his first injury was job related in order to force his employer to pay for medical bills and lost wages, otherwise not compensable.

In order to focus on the reasons the evidence was inadmissible, we must explore the purpose for which the evidence was offered. The employer was attempting to discredit Williams' testimony by demonstrating or by raising an inference that his first claim for compensation was not legitimate.

At the hearing for compensation for the alleged recurrence, the existence of the first injury was a historical fact and the claimant's activities regarding the first injury were prior conduct. The parties had previously agreed to the compensation for that injury. Because the second injury, and not the first, was in issue, facts and evidence pertaining only to the legitimacy of the first injury were not directly related to the function and purpose of the hearing. Whether Williams had ever lied (or had lied about the first injury) was logically relevant in determining whether he was currently telling the truth, because proof of the former could raise an inference with respect to the latter.

However, this would be a mere inference of indeterminate value, as opposed to proof that he was less than honest in testimony about an issue before the tribunal. In addition, the limited resources of our legal system must be apportioned in a manner which will promote the most good. Endless pursuit of tangentially related material of uncertain value with respect to the central issues is a waste of our legal resources. Nor can a party reasonably be expected to have a defense prepared for any past conduct his opponent may choose to question.

Consequently, in order to maintain the fairness of an adversary system and to allocate equitably our limited resources, we must draw a line beyond which matters are legally irrelevant and cannot be pursued. The veracity of a witness is a central matter when testimony on an issue before the trier of fact is involved. Clearly, his historical record for veracity does relate to his current truthfulness.

However, presenting evidence relating to historical veracity leads the trier of fact away from the central issues and; because of its uncertain value and the alternative methods of attacking a witness' testimony on central issues, such exploration must be limited. We believe cross-examination, without the ability to produce *extrinsic* evidence, provides an adequate vehicle for a party to impeach a witness' credibility when such evidence refers to prior conduct. See III Wigmore on Evidence §§ 979, 1000–1004, pgs. 532–538, 652–660 (3rd Ed. 1940). We note that this case does not involve impeachment by reference to prior criminal convictions.

Clearly, the appellee was properly allowed to cross-examine Williams to test

his credibility. *Steigler v. State*, Del.Supr., 277 A.2d 662, 668 (1971). However, presenting extrinsic oral testimony for the sole purpose of impeaching a party's credibility through an attack on his veracity by reference to *previous* conduct explores matters which are too collateral. The risk of undue prejudice exceeds the possible probative value of the testimony and it cannot be allowed. See· *Lewis v. Baker*, 2d Cir., 526 F.2d 470, 475 (1975); Federal Rule of Evid. 608(b). Accord, *Steigler v. State*, supra; Proposed Del.Rule of Evid. 608(b). We hold the evidence in question was legally irrelevant and, the Board erred in permitting its introduction.

## II

The appellee incorrectly asserts that the Board stated it did not rely on the extrinsic evidence in reaching its decision. In fact, the Board gave no indication of what evidence it relied upon. The Board merely stated that the more credible evidence showed the employee had been pain free during the interval between the first injury and the alleged recurrence. The evidence tending to show Williams was pain free consisted of his failure to complain to his employer of nagging back pain, a statement he made while in the hospital to an insurance adjuster, and the evidence introduced to impeach Williams' credibility. The evidence tending to show Williams was troubled by his back was his own testimony before the Board and his statements to the doctors. We cannot agree with the appellee that the improperly admitted evidence did not exert an influence on the real issue in the case.

The real issue before the Board was whether Williams' second injury was related to the first. The medical experts from both sides agreed that, in this case, the controlling, if not the only, factor relevant to determining whether the two injuries were related was whether the patient, Williams, was pain free during the interim between the injuries. Thus, the appellant's entire claim rested on whether the Board believed his assertion that he experienced

nagging pain in that period. The improperly admitted evidence served only as an attack on that credibility. Clearly, the evidence "reasonably tended to exert an influence upon the determination of the real issue in the case." *Bailey v. Huling*, R.I. Supr., 377 A.2d 220, 223 (1977).

We cannot find this error to be harmless. The inadmissible evidence focused directly on the appellant's ability to prove the one factor that was crucial to his case. It did not focus on the crucial factor itself. The Superior Court incorrectly ruled that reversal was proper only if there was an indication that the Board relied on the inadmissible evidence. When, as here, the inadmissible evidence is directed to the claimant's only proof of the central issue of the case, the record must affirmatively show that the decision below rests on proper evidence. Otherwise, we cannot affirm in light of our duty "to determine whether or not there was substantial *competent* evidence to support the finding of the Board . . . ." *Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64, 66 (1965) (emphasis added).

## III

In conclusion, we find that the use of extrinsic evidence for impeachment purposes to have been an error requiring reversal. We remand the case to the Industrial Accident Board for a new hearing on the relevant issues. Of course, in this case, the panel at the new hearing should not contain any member of the previous panel.

\* \* \*

REVERSED and REMANDED.