**Derrick HOEY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 364, 1995.

Supreme Court of Delaware.

Submitted: Dec. 3, 1996.
Decided: Jan. 16, 1997.

Joseph M. Bernstein, Wilmington, for Appellant.

Sam Glasscock, III (argued), and John Williams, Deputy Attorneys General, Department of Justice, Dover, for Appellee.

Before VEASEY, C.J., WALSH, and HOLLAND, JJ.

WALSH, Justice:

The defendant-appellant, Derrick Hoey ("Hoey"), was convicted, following a jury trial, of Trafficking in Cocaine 16 *Del.C.* § 4753A(a)(2)a, Possession with Intent to Deliver Cocaine 16 *Del.C.* § 4751, Possession of Cocaine within 1000 feet of a School 16 *Del.C.* § 4767(a) and Conspiracy Second Degree 11 *Del.C.* § 512. Following his sentencing to a lengthy term of imprisonment, Hoey filed this appeal. He contends the Superior Court erred in (1) excluding the testimony of a defense witness attacking the credibility of the arresting officer and (2) refusing to grant a judgment of acquittal based on the sufficiency of the evidence presented at trial. After a review of the record, we find the trial court correctly excluded from the jury's consideration the proffered testimony of a defense witness and that there was sufficient evidence to sustain Hoey's convictions. Accordingly, we affirm.

I

The evidence presented by the State depicted the following events. On September 1, 1994, Officer Barry Mullins ("Mullins") of the Wilmington Police Department was conducting surveillance in the 300 block of East Ninth Street, an area of high drug activity. From a concealed location, Mullins, with the aid of binoculars, was observing the activity outside a vacant house located at 323 East Ninth Street. Shortly after midnight Mullins observed an individual, later identified as Christopher Page ("Page"), sitting on the steps of the vacant house while Hoey was sitting in a metal chair directly in front of the

house. Hoey was positioned so that his back was facing the street when looking directly at Page. At the time of the surveillance, Hoey and Page were the only persons in the immediate vicinity.

After beginning his surveillance, Mullins observed a dark colored vehicle park near the northwest corner of Ninth and Poplar Streets. The passenger exited the vehicle and walked over to the vacant house where Hoey and Page were sitting. The passenger, after handing a small object to Hoey, proceeded to sit on the steps next to Page. As Mullins watched, Page opened the mail slot in the door of the vacant house and removed a small brown bag. Page took an object from the bag and handed it to the passenger who immediately left the area in the dark colored vehicle. Page then returned the brown bag to the mail slot.

After witnessing this transaction, Mullins alerted backup officers who responded to the scene and searched both Page and Hoey. The police, however, did not attempt to stop or identify the driver or passenger of the dark colored vehicle. The search revealed that Page had $200 in tens and twenties balled up in the toe of his right sneaker. Hoey had ten one dollar bills in a back pocket, and $305 in a roll of twenties, tens and fives in a front pocket. The paper bag found in the mail slot contained an 8.56 gram piece of cocaine along with fourteen smaller plastic bags containing a total of 2.97 grams of cocaine. The aggregate amounts of cash and cocaine were $515 and 11.53 grams respectively. Mullins measured the distance from 323 East Ninth Street to the Bancroft Middle School and that distance was 964 feet.

At trial Detective Brian Cross ("Cross") of the Wilmington Police Department testified for the state as a "drug expert." He noted that the drugs seized were packaged as "$10 bags" and that the money denominations found on Hoey were consistent with proceeds from the sale of "$10 bags." In his opinion the drugs were packaged in a manner which indicated they were being held for sale.

Cross also testified that the transaction, as described by Mullins, was consistent with the style of drug transaction where one person collects the money and the other person distributes the drugs. Under this type of transaction, the person handling the drugs will have no accessible money while the person collecting the money will not possess drugs.[1]

In his defense, Hoey denied having acted with Page in a transaction with the unidentified passenger on the night in question. He also claimed that the $315 on his person was for a trip which he was going to take the following day with some friends to Virginia Beach. The defense also called several witnesses who testified that they visited with Hoey on the night of the alleged drug transaction and they did not see Hoey interact with Page or receive money from third parties. Hoey also offered the testimony of Stephen Wheeler ("Wheeler") to attack the credibility of officer Mullins' belief that he had witnessed Hoey participate in a drug transaction. After hearing Wheeler's testimony outside the presence of the jury, the trial court ruled it inadmissible. It is that ruling which forms the basis for Hoey's first claim of error.

## II

■ In tendering Wheeler as a witness, the defense asserted that he possessed a unique perspective on how the community surrounding 300 East Ninth Street interacted with police. Apparently, the defense intended to demonstrate that, due to its classification as a "high drug area," activity which would otherwise be considered innocuous if observed in a different neighborhood, was routinely mistaken by police to be indicative of drug activity when seen in the area around East Ninth Street. It was argued that Wheeler was qualified to testify on this point because of his own experience in being stopped and arrested by Wilmington police while in the same neighborhood.

Specifically, Wheeler testified that, on the night before Hoey was arrested, Wheeler

---

1. Apparently it is a popular misconception among drug dealers that they will lessen the risk of prosecution for the sale of drugs if they structure their transactions in this manner. Cross testified that splitting responsibility for the drugs and money between two people is currently the norm among drug dealers.

had been arrested by Mullins at the same location on East Ninth Street, allegedly for selling drugs under circumstances similar to those surrounding Hoey's arrest. On that evening Mullins, again in a concealed location, observed an unidentified woman walk up to Wheeler and participate in an exchange. Based on his experience, Mullins suspected a drug transaction had transpired and caused Wheeler to be detained. A search of Wheeler, however, revealed that he had no drugs or money in his possession and ultimately the case against him was *nolle prossed* by the State. The Superior Court, agreeing with the State, ruled that Wheeler's experience with Officer Mullins was not relevant to the issue of Hoey's guilt and excluded Wheeler's testimony from the jury.[2]

The trial court rested its admissibility ruling upon Delaware Rule of Evidence 401 (relevancy), by finding, in effect, that Wheeler's testimony did not make the existence of Hoey's guilt more or less probable.[3] Taking into account the strong similarities between the circumstances surrounding Wheeler's arrest with that of Hoey's, however, we question the trial court's conclusion as to relevancy. Although reaching the same result as the trial court, we prefer to posit our decision that Wheeler's testimony is inadmissable upon D.R.E. 403. Rule 403 establishes a balancing test whereby otherwise admissible evidence can be excluded if its probative value is outweighed by its prejudicial effect. In our view, Wheeler's testimony created a significant risk of jury confusion which clearly outweighed its minimal probative value and thus was properly excluded.

Hoey's objective in presenting Wheeler's testimony was to permit the jury to infer that Mullins had a history of false arrests and that this was the basis for the State's decision to discontinue prosecution. In ef-

fect, Hoey sought to argue that if Mullins had been mistaken in the past by arresting an innocent person, there is a strong likelihood that he was mistaken in his arrest of Hoey. The prosecutor argued at trial, however, that the decision not to prosecute is left to the sole discretion of the Department of Justice and not the police. For this reason, admission of Wheeler's testimony would have required the trial judge to permit the State to offer its reasons why Wheeler was not prosecuted.[4] Faced with conflicting testimony, the jury would first be forced to reach a conclusion as to the validity of Wheeler's arrest before determining the weight to be accorded his testimony with regard to the charges against Hoey. In essence, the jury in this case would have been subjected to a trial within a trial concerning the legitimacy of Wheeler's arrest.

■ A trial within a trial, based entirely on extrinsic evidence, invariably will lead to jury confusion. *Scott v. State*, Del.Supr., 642 A.2d 767 (1994). It is this confusion which D.R.E. 403 requires to be weighed against the probative value of the proffered testimony. The presentation of extrinsic oral testimony for the sole purpose of impeaching credibility, by reference to previous conduct, explores matters which are too collateral to be of probative benefit. *Williams v. Warren Bros. Const. Co.*, Del.Supr., 412 A.2d 334 (1980). In this case, the risk of undue prejudice through jury confusion exceeded the possible probative value of Wheeler's testimony. We therefore conclude that the trial court was correct in withholding Wheeler's testimony from the jury.

### III

■ Hoey next argues that, as a matter of law, the evidence presented at trial by the

---

2.  Stephen Wheeler testified outside of the jury's presence during a *voir dire* examination. At the conclusion of the *voir dire*, the court determined the testimony to be inadmissible.

3.  The State initially objected to the introduction of Wheeler's testimony based on D.R.E. 401 (relevancy) and 403 (probative value). Although not the basis of the trial court's ruling, an objection based on D.R.E. 403 was timely raised and remains a viable issue in this appeal. Del. Supr.Ct.R. 8.

4.  The prosecutor in this case stated to the court that she *nolle prossed* the charge against Wheeler based upon events which transpired after the date of the arrest. She claimed her decision was based on a lack of evidence and not the validity of the arrest. In order for this explanation to be presented to the jury, the prosecutor, in all likelihood, would have been required to withdraw from participation in the trial, thus presenting an additional complicating factor under D.R.E. 403. *See In re Estate of Waters*, Del.Supr., 647 A.2d 1091 (1994).

State was insufficient to sustain his convictions. With respect to the offenses charged, both parties agree that the State had the burden of establishing that Hoey was in "possession" of the drugs found in the mail slot at 323 East Ninth Street. The thrust of the defense argument is that the circumstantial evidence presented by the State was insufficient to establish possession by Hoey and, therefore, the court should have granted Hoey's motion for acquittal. The State responds that it presented sufficient direct and circumstantial evidence of possession to sustain Hoey's convictions, if the evidence is viewed in a light most favorable to the prosecution.

In this case, the State chose to satisfy its burden as to the essential element of "possession" not by proving "actual possession" but instead relied upon a theory of "constructive possession." The term "possession" as defined under the relevant statute, "in addition to its ordinary meaning, includes location in or about the defendant's person, premises, belongings, vehicle or otherwise within the defendant's reasonable control." 16 *Del.C.* § 4701(28). In interpreting this provision, this Court has noted that the element of possession can be satisfied by a showing that the defendant was in constructive possession of the illegal substance at the time of the alleged offense. *See Holden v. State,* Del. Supr., 305 A.2d 320, 322 (1973).[5]

■ In order to establish constructive possession, the State must present evidence that the defendant: (1) knew the location of the drugs; (2) had the ability to exercise dominion and control over the drugs; and (3) intended to guide the destiny of the drugs. *McNulty v. State,* Del.Supr., 655 A.2d 1214, 1217 (1995). In addition, a *prima facie* case of constructive possession may be established if there is "evidence linking the accused to an ongoing criminal operation of which possession is a part." *Id.* Evidence of a defendant's constructive possession may be proven exclusively through circumstantial evidence since this Court no longer distinguishes between direct and circumstantial evidence in a

conviction context. *Skinner v. State,* Del. Supr., 575 A.2d 1108, 1121 (1990).

■ In reviewing Hoey's insufficiency of the evidence claim, we look to see "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [the] defendant guilty beyond a reasonable doubt." *Robertson v. State,* Del.Supr., 596 A.2d 1345, 1355 (1991). At trial the State offered the testimony of Officer Mullins that he witnessed an unidentified person hand an object to Hoey and then saw that same person receive another object from a bag later determined to contain cocaine. The bag was in the actual custody of Hoey's companion, a person later identified as Page. The jury also heard the testimony of an expert witness who opined that the events witnessed were indicative of a two tiered drug transaction. The witness further testified that in his opinion the cocaine found in the mail slot was packaged for sale in "$10" bags. Finally, consistent with a two tiered drug sale, Hoey had no drugs on his person but did have a large sum of cash in $10 denominations while Page had no easily accessible cash on his person.

From the testimony offered, a reasonable juror could conclude that Hoey was first paid by the unidentified buyer and then Hoey instructed Page, directly or through prior arrangement, to turn over the drugs. Consistent with a theory of constructive possession, the State presented sufficient evidence to establish that Hoey: (1) knew the location of the drugs; (2) exercised dominion and control over the drugs by receiving payment for them; and (3) did in fact guide the destiny of the drugs. *See McNulty,* 655 A.2d at 1217.

■ Although acknowledging the appearance of a transaction, Hoey argues that there exist innocent explanations for his presence at the 323 East Ninth Street and his possession of the money which precludes a rational trier of fact from finding beyond a reasonable doubt the elements of constructive possession of illegal drugs. *See Monroe*

---

5. *See also State v. Schmidt,* 110 N.J. 258, 540 A.2d 1256, 1260–65 (1988) (a discussion of the historical development of "possession"); 28

C.J.S. *Drugs & Narcotics* § 170 at 773 (1996) (In order to constitute a crime possession can be constructive as well as actual or physical).

**1182**

*v. State,* Del.Supr., 652 A.2d 560, 567 (1995). The State, however, is not required to disprove every possible innocent explanation in purely circumstantial evidence cases. *Williams v. State,* Del.Supr., 539 A.2d 164, 167 (1988). At trial, Hoey had an opportunity to counter the State's evidence by presenting to the jury his own innocent explanation for the questioned events. The jury resolved these conflicts in the State's favor and that resolution is not subject to review. "It has long been our law that the jury is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony." *Id.* at 168.

Hoey relies upon our decision in *Monroe* to support his "innocent explanation" rationale. We find *Monroe* distinguishable in several respects. First, *Monroe* did not establish a new burden of proof for circumstantial evidence cases as Hoey suggests but rather, was limited to the application of existing law to the unique facts presented in that appeal. Secondly, the issue in *Monroe* was whether one latent fingerprint recovered from a public building was sufficient evidence, standing alone, to place the defendant at the scene of a crime. Here, the defendant's presence at the crime scene is undisputed. Finally, Hoey's "innocent explanation" is dependent almost entirely on resolution of a conflict between police observation and his own testimony. Ultimately, the jury chose to believe the explanation proffered by the police over the "innocent," and often contradictory, explanation offered by Hoey.

In conclusion we find that under D.R.E. 403 the probative value of Stephen Wheeler's testimony was outweighed by its prejudicial effect. Taking all the evidence presented in a light most favorable to the State we find that sufficient evidence was presented at trial to sustain the jury's verdict that Hoey was in constructive possession of the drugs during the drug sale. The judgments of the Superior Court are accordingly AFFIRMED.