IN THE SUPREME COURT OF THE STATE OF DELAWARE

PAUL WRIGHT, § 
                                 §     No. 36, 2015
     Defendant Below, § 
     Appellant, §     Court Below:
                                   § 
                                   §     Superior Court of the
         v. §     State of Delaware, in and for
                                     §     New Castle County
                                     § 
STATE OF DELAWARE, § 
                                   §     Cr. I.D. No. 1406015553
     Plaintiff Below, § 
     Appellee. § 

Submitted: September 30, 2015
Decided: October 19, 2015

Before **STRINE**, Chief Justice, **HOLLAND** and **VALIHURA**, Justices.

**O R D E R**

This 19th day of October 2015, upon consideration of the appellant's brief, the State of Delaware's response, and the record below, it appears to the Court that:

(1) The appellant, Paul Wright ("Wright"), filed this appeal from the Superior Court's January 14, 2015 denial of his Motion for Judgment of Acquittal. The State of Delaware argues that the judgment below should be affirmed. We agree and AFFIRM.

(2) On June 19, 2014, Wright was arrested outside of the Fairview Inn in Wilmington, Delaware. During May and June of that year, Detective Randolph Pfaf ("Pfaf"), a member of the City of Wilmington Police Department who was assigned to and deputized with the Drug Enforcement Administration, communicated with a

1

suspected drug dealer via text messages and phone calls to a certain cellular telephone number. The communications during this period of time were with respect to a planned purchase by Pfaf of two "logs" of heroin—constituting approximately 260 individual bags of the prohibited substance—for $750 on June 19, 2014. Pfaf was directed by the communicating individual, the suspected drug dealer, to proceed to room 165 at the Fairview Inn ("Room 165") to consummate the transaction.

(3)     Upon arriving at the Fairview Inn, Pfaf observed Wright in front of the hotel's office, located on the side opposite that of Room 165. After obtaining a search warrant for Room 165, police officers executed the warrant, discovering a contraceptive box containing 26 bags of heroin within a bedside dresser. Pfaf also discovered a bag of marijuana in Room 165.

(4)     Simultaneous with the execution of the search warrant, Detective Ahmard Reddick ("Reddick") of the Wilmington Police Department observed Wright in front of the Fairview Inn's office with a cellular phone in his possession. Before arresting Wright, Reddick searched Wright and found no weapons, drug paraphernalia, or contraband. Reddick discovered only a cellular phone, which Wright placed at his side upon the detective's approach, and a key card granting access to Room 165. When Pfaf redialed the cellular phone number he had previously been communicating with to arrange the heroin purchase, Wright's phone rang, revealing an image of Wright and a child on the device's screensaver. Wright admitted to Reddick that the cellular phone was his.

2

(5) On January 14, 2015, after a two-day trial, a jury found Wright guilty of Possession of Heroin as a lesser included offense of Drug Dealing, as well as Possession of Marijuana. At the conclusion of the prosecution's case during the trial below, Wright moved for judgment of acquittal on the basis that there was insufficient evidence to prove beyond a reasonable doubt that he knowingly possessed the heroin and marijuana at issue. The Superior Court denied the motion. Wright was sentenced to 90 days of Level 5 incarceration, with credit for 90 days served for the marijuana possession. In addition, as a result of the heroin conviction, Wright was sentenced to 6 months of Level 5 incarceration with credit for 130 days served, suspended after 130 days for 6 months of Level 3 supervision. This appeal followed.

(6) Wright contends that that there was insufficient evidence to prove beyond a reasonable doubt that he possessed the heroin and marijuana, and he requests that his convictions and sentences for possession of heroin and possession of marijuana be reversed. Wright argues that mere proximity to controlled substances—or mere association with persons who have possession and control of such substances—is insufficient to establish his knowing possession and control.

(7) "We review *de novo* a trial judge's denial of a criminal defendant's Motion for Judgment of Acquittal to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements

of the crimes charged *beyond a* reasonable *doubt*."[1]  Further, "[f]or the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence of [a] defendant's guilt."[2]

(8)  In order to "establish constructive possession [of a controlled substance], the State must present evidence that the defendant:  (1) knew the location of the drugs; (2) had the ability to exercise dominion and control over the drugs; and (3) intended to guide the destiny of the drugs."[3]  This Court has found that "a *prima facie* case of constructive possession may be established if there is 'evidence linking the accused to an ongoing criminal operation of which possession is a part.'"[4]  However, "mere proximity to, or awareness of[,] drugs is not sufficient to establish constructive possession."[5]

(9)  Before June 19, 2014, the date of Wright's arrest, Pfaf had been communicating via text messages and phone calls with a suspected drug dealer concerning a purchase of heroin, and Wright was in possession of the phone associated with the communicating telephone number on the day he was taken into custody. Further, during Pfaf's discussions with the potential drug dealer, the latter instructed Pfaf to appear at Room 165 to complete the transaction.  Wright, at the time of his arrest, was waiting near Room 165 and possessed a key card required to access the room, which housed the controlled substances.  Therefore, viewing the evidence in a light most

---

[1] *White v. State*, 906 A.2d 82, 85 (Del. 2006) (citing *Priest v. State*, 879 A.2d 575, 577 (Del. 2005)) (emphasis in original); *see also Hardin v. State*, 844 A.2d 982, 989 (Del. 2004) (quoting *Cline v. State*, 720 A.2d 891, 892 (Del. 1998)).

[2] *Hardin*, 844 A.2d at 989 (quoting *Cline*, 720 A.2d at 892).

[3] *White*, 906 A.2d at 86 (quoting *Hoey v. State*, 689 A.2d 1177, 1181 (Del. 1997)); *see also Wright v. State*, 2014 WL 1003584, at *1 (Del. Mar. 7, 2014) (citations omitted).

[4] *Wright*, 2014 WL 1003584, at *1 (quoting *Hoey*, 689 A.2d at 1181) (emphasis added).

[5] *White*, 906 A.2d at 86 (internal citations omitted).

4

favorable to the State, a rational trier of fact could properly determine beyond a reasonable doubt that Wright knew the location of the quantities of heroin and marijuana at issue. Similarly, given the presence of the key card on Wright's person and Pfaf's drug-related communications with the number associated with Wright's cellular phone, a reasonable jury could find beyond a reasonable doubt that Wright exercised dominion and control over the heroin and marijuana at issue in this case.

(10) Wright's reliance on this Court's holding in *White v. State*[6] does not change this result. In *White*, police searched the apartment of the defendant's son, who had been the subject of an investigation for his possible involvement in selling drugs. The defendant was present at the time of the search, as she was residing at her son's apartment on a temporary basis. In the walk-in closet of the master bedroom, police found 177 grams of white powdered cocaine, 6.5 grams of uncolored crack cocaine in a women's shoe, and 3.16 grams of marijuana. Upon searching the defendant's person, police discovered 4.63 grams of pink crack cocaine in her right sock. The police found nothing of the defendant's in the walk-in closet. The State prosecuted the defendant for Trafficking in Cocaine over 100 grams and Conspiracy to Traffic in Cocaine. At the close of the State's case, the trial judge denied the defendant's Motion for Judgment of Acquittal. On appeal from the trial judge's denial of the motion, this Court found that "no rational jury could find *beyond a reasonable doubt* that [the defendant] exercised

---

[6] 906 A.2d 82 (Del. 2006).

dominion and control over, or 'intended to guide the destiny of,' the white powdered cocaine found in the walk-in closet."[7]

(11)    Wright's possession of both a key card granting access to Room 165 and the cellular phone used to arrange the transaction in the same space would enable a reasonable jury to conclude that he constructively possessed the heroin and marijuana. In *White*, the defendant's strongest link to the controlled substances was her proximity to the drugs and temporary residence in her son's apartment where they were found. Here, Wright possessed the key card necessary to enter Room 165 and the cellular phone used to arrange the alleged sale. The cellular phone was admittedly his, it bore his image on its screensaver, and it rang when Pfaf redialed the potential drug dealer's number. The key card and cellular phone would permit a rational jury to reach the conclusion beyond a reasonable doubt that Wright knew the location of the contraband, had the ability to exercise dominion and control over the drugs, and intended to guide the destiny of the controlled substances. A rational jury, viewing the evidence in a light most favorable to the State, could, therefore, properly reach the conclusion beyond a reasonable doubt that Wright committed the offenses charged.

---

[7] *Id.* at 86.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ Karen L. Valihura
Justice