# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
          Plaintiff, )
)
      v. )    ID Nos. 2001020200 and 2205013206
)
BRIAN M. STIGILE, )
)
          Defendant. )

Submitted: June 13, 2024
Decided: September 30, 2024

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Louis F. D'Onofrio, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the State*.

Brian M. Stigile, Howard R. Young Correctional Institution, Wilmington, Delaware, *pro se*.

Peter W. Veith, Esquire, Wilmington, Delaware, *Trial Counsel for Defendant*.

SALOMONE, Commissioner

This 30th day of September 2024, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court as follows:

## FACTS AND PROCEDURAL HISTORY

**Case Number 2001020200**

On each of December 17, 2019, January 7, 2020, and January 22, 2020, the New Castle County Police Department responded to calls regarding reports of burglaries. Each burglary resulted in damages to the victims' residences as well as theft of jewelry and other personal property.[1] A person fitting the description of Brian M. Stigile ("Stigile" or the "Defendant") was spotted at all three of the burglaries as was the gray Cadillac parked outside the Defendant's residence.[2] A pawn shop database search revealed that the Defendant had pawned multiple pieces of jewelry in January 2020, including jewelry reported as stolen from one of the victims.[3] In a post-*Miranda* interview, the Defendant's girlfriend, Ashlie Marshall ("Marshall"), admitted that she would accompany Stigile to the residences and sit in the car while he entered the dwellings and took jewelry and other property from the

---

[1] These general facts are taken from the Affidavit of Probable Cause, dated February 1, 2020, *State v. Brian M. Stigile*, Delaware Superior Court Criminal Docket, ID No. 2001020200 (hereinafter, "D.I. __") 1.
[2] *Id.*
[3] *Id.*

victims' homes.[4]  She also confessed that the two would then go together to pawn the stolen items.[5]

On February 1, 2020, the New Castle County Police Department arrested Stigile in connection with each of the aforementioned burglaries.  On August 10, 2020, he was indicted for the following offenses: (i) three counts of Burglary in the Second Degree, (ii) one count of Theft Over $1500 from a Victim 62 Years or Older, (iii) two counts of Theft $1500 or Greater, (iv) three counts of Conspiracy Second Degree, (v) two counts of Selling Stolen Property Under $1500, and (vi) three counts of Criminal Mischief Under $1000 Property Damage.[6]  On September 13, 2021, Stigile failed to appear for his final case review and this Court issued a capias for his arrest.[7]

**Case Number 2205013206**

On May 26, 2022, members of Operation Safe Streets responded to a Wilmington residence which had been part of an ongoing investigation.[8]  Stigile was found at the residence and taken into custody upon officers discovering he had an active capias.[9]  Within the bedroom belonging to Stigile and Marshall, officers found

---

[4] *Id.*
[5] *Id.*
[6] D.I. 4.
[7] D.I. 12.
[8] These general facts are taken from the Affidavit of Probable Cause, dated May 26, 2022, *State v. Brian M. Stigile*, Delaware Superior Court Criminal Docket, ID No. 2205013206 (hereinafter, "D.I.2. __") 1.
[9] *Id.*

2

a metal safe that the couple denied ownership of.[10] Within the safe, officers found the following: (i) approximately 221 blue wax bags containing a total of 1.547 grams of heroin or a combination of heroin and fentanyl valued at approximately $2,210.00; (ii) 6 bags containing a green, leafy plant like substance weighing approximately 21.0 grams that tested positive for marijuana; (iii) paperwork in the name of the Defendant; (iv) $2,200.00 in U.S. dollars; and (v) a Visa debit card in the name of Marshall.[11] No needles were found by officers to indicate personal use of the heroin/fentanyl and neither Stigile nor Marshall were legitimately employed at the time of arrest.[12] In a second post-*Miranda* statement, Marshall advised the police that Stigile was actively involved in the street level sale of heroin/fentanyl.[13] On July 22, 2022, the State filed an information against the Defendant for Drug Dealing for knowingly possessing with the intent to deliver heroin, a controlled substance under Delaware law.[14]

On July 28, 2022, Stigile plead guilty to one count of Drug Dealing and two counts of Burglary in the Second Degree and was sentenced to eight years at Level 5, suspended after two years at Level 5 for one year at Level 3 with respect to both counts of Burglary in the Second Degree and eight years at Level 5, suspended after

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] D.I.2. 3.

one year at Level 5 for one year at Level 3 with respect to Drug Dealing.[15] As part of the plea agreement, the State enter a *nolle prosequi* on the remaining charges.[16]

On September 20, 2022, Stigile filed a notice of appeal of his sentence to the Delaware Supreme Court.[17] The appeal, however, was untimely as it should have been filed on or before August 29, 2022.[18] Stigile asserted the delay in filing his appeal was due to his being placed on quarantine for COVID-19 after sentencing and his lack of access to the law library.[19] He also requested an extension of time to file his appeal but sent the request to the Superior Court instead of the Supreme Court in error.[20]

At the request of the Supreme Court, defense counsel responded to Stigile's contentions and stated that he had met with Stigile via Zoom the day before he pled guilty and advised him that he needed to notify counsel within thirty days if he wished to appeal his sentence.[21] Stigile failed to do so.[22] Having failed to demonstrate that his failure to file a timely appeal was attributable to court-related personnel, the Supreme Court dismissed Stigile's appeal on December 2, 2022.[23]

---

[15] D.I. 43 (Transcript of July 28, 2022 Guilty Plea Colloquy and sentencing proceedings).
[16] D.I. 43 (*See* fully executed Plea Agreement with Brian M. Stigile, dated July 27, 2022).
[17] *Stigle v. State,* 288 A.3d 690 (TABLE), 2022 WL 17410095 (Del. Dec. 2, 2022).
[18] *Id.; see also* D.I. 47.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

## MOTION FOR POSTCONVICTION RELIEF

On June 26, 2023, Defendant filed a *pro se* Motion for Postconviction Relief and Motion for Appointment of Counsel pursuant to which he asserts five claims of ineffective assistance of counsel.[24] Those claims can be fairly summarized as follows:

**Claim 1** – defense counsel inappropriately bargained for resolution of the Drug Dealing charge (case number 2205013206) with the Burglary charges (case number 2001020200) in the plea negotiations despite the Defendant informing counsel that he was not guilty of the Drug Dealing charge and wished to proceed to trial on that charge;

**Claim 2** – defense counsel displayed prejudice towards the Defendant and coerced him into pleading guilty by stating "nobody likes a thief";

**Claim 3** – defense counsel caused the Defendant to perjure himself by having him confess to Drug Dealing when he was innocent of that charge;

**Claim 4** – defense counsel failed to inform the Defendant of his right to appeal his sentence; and

---

[24] D.I. 34-35. The Court denied Stigile's Motion for Appointment of Counsel on October 13, 2023. *See* D.I. 41.

**Claim 5** – defense counsel and the prosecution conspired and coerced the Defendant into pleading guilty by taking advantage of his alleged learning disability.[25]

## APPLICABLE LAW FOR POST CONVICTION RELIEF

Before addressing the merits of a postconviction relief claim, the Court must determine whether there are any procedural bars to the motion.[26] Superior Court Criminal Rule 61 ("Rule 61") establishes four procedural bars to postconviction relief. Rule 61(i)(1) requires a postconviction motion to be filed no later than one year after the judgment of conviction is final.[27] Rule 61(i)(2) provides that any second or subsequent postconviction motion must be summarily dismissed unless the movant was convicted after trial and he pleads with particularity that new evidence exists demonstrating his actual innocence or a new, retroactive rule of Constitutional law applies to his case such that it would render his conviction invalid.[28] Rule 61(i)(3) bars any ground for relief that was not asserted by the movant in the proceedings leading to the conviction, unless he can show cause for relief from the procedural default and demonstrate prejudice from violation of the movant's

---

[25] D.I. 34.
[26] *Maxion v. State*, 686 A.2d 148 150 (Del.1996). All references to the rule are to the rule in place at time the Defendant filed his motion for postconviction relief. *See Bradley v. State*,135 A.3d, 757 n.24 (Del. 2016).
[27] Super. Ct. Crim. R. 61 (i)(1).
[28] Super. Ct. Crim. R. 61 (d)(2).

rights.[29] And, Rule 61(i)(4) prohibits a movant from raising any ground for relief that has previously been formally adjudicated in earlier proceedings.[30]

This is the Defendant's first motion for Motion for Postconviction Relief and it was timely filed on June 26, 2023. No other procedural bars prevent the Court from considering Stigile's ineffective assistance of counsel claims on the merits.

To succeed on an ineffective assistance of counsel claim, the Defendant must meet the two-pronged *Strickland* test[31] by showing that: (1) counsel performed at a level 'below an objective standard of reasonableness'[32] and that, (2) the deficient performance prejudiced the defendant.[33] To meet the requirements of the first prong, a defendant must show by a preponderance of the evidence that defense counsel was not reasonably competent. The second prong requires a defendant to show "that there is a reasonable probability that, but for the defense counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome."[34] A mere allegation is not enough to satisfy these requirements. A defendant must

---

[29] Super. Ct. Crim. R. 61 (i)(3).
[30] Super. Ct. Crim. R. 61 (i)(4).
[31] *Strickland v. Washington*, 446 U.S. 668 (1984).
[32] *Id*. at 688.
[33] *Id*. at 694.
[34] *Id.* at 694.

indicate faults counsel made that were far removed from reasonable, leading to an outcome that was measurably worse for the Defendant.[35]

In the context of a plea challenge, it is not sufficient for the defendant to claim simply that his counsel was deficient. The defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[36] For the reasons set forth below, all of the claims raised in the Motion for Postconviction Relief were waived upon the entry of Defendant's guilty plea and are also without merit.

### Stigile's Claims Were Waived Upon the Entry of His Guilty Plea

A defendant is bound by his answers on the guilty plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[37] In the subject action, the Plea Agreement, plea colloquy, and Truth-in-Sentencing Guilty Plea Form indicate that Stigile knowingly, voluntarily, and intelligently entered a guilty plea.[38]

During the guilty plea colloquy, the Defendant provided sworn testimony that (1) he reviewed each of the Waiver of Indictment, Plea Agreement, Immediate

---

[35] *Strickland*, 466 U.S. at 695.
[36] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hickman v. State,* 1994 WL 590495 (Del.) (applying *Strickland* to guilty pleas).
[37] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).
[38] D.I. 43.

Sentencing Form, and the Truth-in-Sentencing Guilty Plea, (2) he gave his attorney authority to sign the foregoing documents on his behalf, (3) his attorney addressed any issues, questions, or concerns he had, and (4) he had not been threatened or forced to plead guilty.[39] Stigile further represented that he understood the Constitutional rights he was giving up by entering the plea and admitted his guilt to the three charges comprising the Plea Agreement.[40] The Court thereafter found Stigile's plea to be knowing, intelligent and voluntary.[41]

Stigile has not presented any clear, contrary evidence to call into question his testimony at the plea colloquy or answers on the Truth-in-Sentencing Guilty Plea Form. Accordingly, Stigile's valid guilty plea waived his right to challenge any alleged errors, deficiencies or defects occurring prior to the entry of his plea, even those of constitutional proportions.[42] Although the query could conclude at this point, the Court will, nonetheless, address Stigile's individual claims of ineffective assistance of counsel.

---

[39] D.I. 43 (pgs. 8-12).
[40] D.I. 43 (pgs. 12-14).
[41] D.I. 43 (pg. 14).
[42] *Smith v. State,* 841 A.2d 308 (TABLE), 2004 WL 120530, at *1 (Del. Jan. 15, 2004); *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State,* 2009 WL 2426675 (Del. 2009); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004).

**Claim I: Resolving Charges from Two Cases in One Plea Agreement**

The Defendant argues that defense counsel was ineffective for not objecting to the inclusion of the Drug Dealing charge as part of the Plea Agreement.[43] Contrary to Stigile's assertion, however, defense counsel could not have simply "informed the prosecution to strike the [Drug Dealing] charge from the plea agreement . . ."[44] Rather, only the State is permitted to generate plea deals and is the only actor with authority to offer them. Had defense counsel rejected the proposed global plea offer, the State would have had no obligation to offer a different plea under the terms the Defendant was suggesting.[45]

Moreover, the Defendant has failed to establish how he was prejudiced by the global plea deal or otherwise demonstrated a reasonable probability that the outcome would have been more beneficial to him had he rejected the global plea offer. The Defendant was sentenced to eight years at Level 5, suspended after two years with respect to both counts of Burglary in the Second Degree and eight years at Level 5, suspended after one year with respect to the sole count of Drug Dealing. With the sentences running consecutively, Stigile was facing a total of five years of Level V time.[46] Whereas, all the crimes charged in case number 2001020200 alone carried

---

[43] D.I. 34 at 3.
[44] D.I. 34 at 7.
[45] *See* D.I. 34 at 3 ("The Defendant informed Veith that he would plead guilty to two counts of Burglary in criminal case N 2205013206").
[46] D.I. 43 at 5.

potential maximum sentences of more than third-nine years at Level V.[47] When coupled with the Drug Dealing charge in case number 220501320, which carried the possibility of another eight years at Level V, the Defendant was facing a potential sentence of more than forty-seven years at Level V if convicted of all charges.

And, had Stigile rejected the State's global plea, the alternative of going to trial would have likely produced a much less favorable result for him as the probability of his being convicted in both cases was exceedingly high. As defense counsel discussed with Stigile in advance of the guilty plea, the evidence of Defendant's guilt in both felony cases against him was overwhelming.[48] It included two post-*Miranda* statements from his girlfriend implicating him in both cases as well as substantial circumstantial evidence.[49] With respect to the burglary charges, the Defendant and his car were seen in the vicinity of the burglaries and he was found to have pawned many items identified as stolen shortly after they were taken. With respect to the Drug Dealing charge, a large quantity of illegal narcotics and cash were found in his residence amongst his personal papers.

---

[47] Each of the three counts of Burglary in the Second Degree carried a potential sentence of up to 8 years at Level V; Felony Theft from a Victim 62 Years or Older carried a potential sentence of up to 3 years at Level V; each of the two counts of Felony Theft carried a potential sentence of up to 2 years at Level V; each of the three counts of Conspiracy Second Degree carried a potential sentence of up to 2 years at Level V; each of the two counts of Selling Stolen Property carried a sentence of up to 1 year at Level V; and each of the two counts of Criminal Mischief carried a potential sentence of up to 30 days at Level V. *See* D.I. 45 at 4.

[48] D.I. 42.

[49] *Id.*; *See Hoey v. State*, 689 A. 2d 1177, 1181 (Del. 1997) (finding that evidence of a defendant's constructive possession may be proven exclusively through circumstantial evidence).

11

Likewise, had the Defendant been convicted of the burglary charges in case number 2001020200, the State was prepared to petition the Court to have him sentenced as a habitual offender as he had multiple prior felony burglaries when arrested.[50]   Had the State's petition been granted, even if the Defendant were convicted of only one count of Second Degree Burglary, the Defendant could have been sentenced to up to twenty-four years at Level V supervision without the possibility for parole as a habitual offender.[51]

Based on the weight of evidence against the Defendant and the potential sentences he was facing, it was objectively reasonable for defense counsel to conclude that a global plea was the most prudent defense strategy in this case.  "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options' that decision is 'virtually unchallengeable' . . ."[52] In view of the totality of the circumstances, defense counsel's representation of Stigile was effective in securing a plea deal which inured to his benefit.  The Defendant has failed to show how "striking" the Drug Dealing charges from the plea agreement would have resulted in his receiving a lesser sentence.  Nor has he shown that there was a reasonable probability that he would not have taken the global plea but would

---

[50] D.I. 42.
[51] 11 *Del. C.* §§ 4212 (d), (e).
[52] *Ploof v. State*, 75 A.3d 840, 852 (Del. Super. 2013) (citing *Strickland v. Washington,* 466 U.S. 668, 690-91 (1984).

have insisted on going to trial when considering all the facts and circumstances. As such, the Defendant's first claim for ineffective assistance of counsel is without merit.

**Claim 2: Coercion by Defense Counsel**

Defendant argues that defense counsel was ineffective because he displayed prejudice towards him and coerced him into taking the plea.[53] Specifically, Stigile alleges that defense counsel, when discussing his options, threatened him by saying "nobody likes a thief" and this alleged statement forced Stigile into accepting the plea agreement.[54]

For his part, defense counsel does not recall making such a statement.[55] However, even if trial counsel had stated that "nobody likes a thief," such a statement would not be tantamount to coercion. Rather, the statement appears to reflect defense counsel's assessment of the potential effect that Stigile's prior burglary convictions would likely have on a jury if presented as impeachment evidence at trial.[56] And, if Stigile's prior convictions were coupled with the overwhelming evidence against him in, it further increases the likelihood that a jury would have convicted him.

---

[53] D.I. 34.
[54] *Id.*
[55] D.I. 42.
[56] *See* D.I. 42 at 2 (stating that "this was probably stated to make a point that a jury may not be very sympathetic to someone who is alleged to be committing day-time residential burglaries.)

Moreover, the Defendant did not complain of coercion during his plea colloquy.[57]  Instead, Stigile expressly denied that anybody had threatened or forced him into pleading guilty.[58]  That statement was made under oath and the Court found his plea to be knowing, intelligent, and voluntary.  In light of the foregoing, the Court finds Defendant's second claim of ineffective assistance of counsel regarding coercion to be without merit.

**Claim 3: Coerced Perjury Caused by Defense Counsel**

Like his second claim, the Defendant also argues defense counsel caused him to perjure himself by having him confess to Drug Dealing when he was innocent of that charge.[59] Stigile claims that he expressed his innocence to his counsel and his desire to stand trial for that specific charge, but counsel failed to follow his wishes in that regard.[60]

In his affidavit, counsel acknowledged that Stigile expressed hesitancy about pleading guilty to Drug Dealing but denies forcing or coercing him to take the plea.[61] Rather, counsel states that he only advised Stigile of the pros and cons of his case and the plea offer in light of the evidence against him.[62]  The Court finds this statement to be credible and consistent with good criminal defense practice.

---

[57] D.I. 43.
[58] *Id.*
[59] D.I. 34.
[60] *Id*.
[61] D.I. 42.
[62] *Id*.

Moreover, the record does not support Stigile's assertion that he perjured himself in pleading guilty to Drug Dealing. The evidence in case number 2205013206 was substantial and included, among other things, (i) a safe located in the Defendant's bedroom which contained 221 bags of heroin/fentanyl packaged for retail sale accompanied by paperwork with the Defendant's name and (ii) a post-*Miranda* statement by his co-defendant girlfriend indicating that the Defendant was involved in the street-level sale of heroin/fentanyl. Again, had the Defendant proceeded to trial on the Drug Dealing charge based on this evidence, there is a strong likelihood that he would have been convicted and facing a sentence of up to eight years at Level V for this conviction alone. A global plea for a total of five years at Level V is a far better outcome for the Defendant.

And, as previously mentioned, the Defendant is bound by his sworn testimony during the plea colloquy. For these reasons, the Court finds the Defendant's third claim of ineffective assistance of counsel to be without merit.

**Claim 4: Failure to Inform the Defendant Regarding His Right to Appeal**

Stigile asserts that his defense counsel was ineffective for failing to advise him of the deadline to file an appeal of his sentence.[63] This claim is without merit because it contradicts the statements and arguments Stigile raised to the Delaware Supreme Court when attempting to justify his untimely appeal.

---

[63] D.I. 34.

In his response to the notice to show case, Stigile stated that the reasons for the delay in filing his appeal were due to his (i) being quarantined for COVID-19 post-sentencing, (ii) limited access to the law library, and (iii) initially filing his request for an extension to the wrong court.[64] He raised no argument that his defense counsel neglected to inform him of the deadline to file an appeal at that time.[65] Defense counsel, on the other hand, stated that when he met with Stigile to complete the guilty plea paperwork he advised him that he needed to notify counsel's office within thirty days of sentencing if he wished to appeal.[66]

Based on his actions, Stigile was clearly aware that there was a deadline for filing his appeal with the Supreme Court since he sought an extension, albeit with the wrong court. Given his actions and previous statements to the Supreme Court, a claim at this juncture that his counsel never informed him of the filing deadline is not credible. The Court finds Defendant's fourth claim of ineffective assistance of counsel to also without merit.

**Claim 5: Collusion and Coercion Due to Defendant's Alleged Disability**

The Defendant's final claim of ineffective assistance of counsel concerns his alleged learning disability.[67] Stigile asserts that his defense counsel and the State

---

[64] D.I. 47; *Stigile v. State,* 288 A.3d 690 (TABLE), 2022 WL 17410095 (Del. Dec. 2, 2022) at 2.
[65] *Cf*. D.I. 34.
[66] D.I. 47.
[67] D.I. 34.

colluded to exploit his learning disability by threatening him with lengthy imprisonment to coerce him into taking a plea.[68] He further claims that the "Court's colloquy was insufficient to evaluate the disability, and to uncover why the Defendant was pleading guilty to [Drug Dealing] when that charge was not before the Court . . ."[69]

However, the Defendant never explains in his motion the nature of his alleged disability and only describes it as "[a] disability that is obvious by just looking and talking with the Defendant."[70] But the record suggests that is not the case. Counsel states that he did not have any difficulty in discussing the plea with Stigile and that the Defendant answered all the questions on the plea documents appropriately.[71] Likewise, the Court conducted the standard plea colloquy with Stigile and found no issue with the Defendant's responses. Nor did Stigile mention that he had any type of learning disability during the plea colloquy at any point.[72] The Court is not obligated to evaluate a disability that was never mentioned or is not readily apparent. Nor was the Court required to question why the Defendant was pleading guilty to the charges set forth in his signed plea agreement as the Defendant asserts.[73]

---

[68] *Id.*
[69] D.I. 34.
[70] *Id.* at 6.
[71] D.I. 42.
[72] D.I. 43.
[73] D.I. 34

Nor does the record reflect that defense counsel and the prosecution were conspiring and threatening Stigile with a lengthy sentence if he did not take the plea. Any purported statements made regarding the potential prison time the Defendant was facing if convicted of all or only a portion of the charges he was indicted for accurately reflected Defendant's circumstances.[74] The Defendant's options were straight forward – either take the global plea and serve five years at Level V or risk a far lengthier prison sentence if convicted of only a fraction of the indicted charges.

Having failed to explain the nature of his alleged learning disability or the manner in which it effected his guilty plea, the Court cannot find any prejudice to the Defendant for counsel's failure to bring this unknown disability to the Court's attention. Therefore, the Court also finds Defendant's fifth claim of ineffective assistance of counsel to be meritless.

---

[74] *Skyes v. State*, 2012 1413958, at *5 (stating that "it is entirely appropriate for Defendant's counsel to explain that if the offered plea was rejected, Defendant was unlikely to be successful at trial and could receive a possible life sentence").

## CONCLUSION

After a thorough evaluation of the record, the Court concludes that the claims set forth in Stigile's Motion for Postconviction Relief are without merit and should be **DENIED**.

**IT IS SO RECOMMENDED.**

_____
The Honorable Janine M. Salomone