**DELLE DONNE & ASSOCIATES, LLP and Delmont Partners, LLP, Defendants Below, Appellants/Cross-Appellees,**

v.

**MILLAR ELEVATOR SERVICE COMPANY and Schindler Elevator Company, Defendants Below, Appellees/Cross-Appellants.**

No. 070,2003.

Supreme Court of Delaware.

Submitted: Nov. 4, 2003.
Decided: Jan. 9, 2004.

---

Armand J. Della Porta, Jr., of Kelley Jason McGuire & Spinelli, LLP, Wilming-

ton, DE, for the Defendants Below/Appellants.

Vincent A. Bifferato, Jr., of Bifferato, Bifferato & Gentilotti, of Wilmington, DE and Keith E. Johnson (argued), of Kittredge, Donley, Elson, Fullem & Embick of Philadelphia, PA, for Defendants Below, Appellees/Cross Appellants.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE, and JACOBS, Justices, constituting the Court en Banc.

JACOBS, Justice:

The plaintiff, who was injured while riding on an elevator, brought this action in the Superior Court against two companies that installed and serviced the elevator (the "Millar defendants" or "Millar"), and against two companies that owned and managed the building where the elevator was located (the "Delle Donne defendants" or "Delle Donne"). During the pendency of that case and before the trial began, all four defendant companies entered into joint tortfeasor settlements with the plaintiff. That left for resolution only the defendants' cross claims against each other for indemnity and contribution.

At the trial on the defendants' cross claims, the jury determined (*inter alia*) the defendants' proportionate liability, finding that the Delle Donne defendants were 65% liable, and that the Millar defendants were 35% liable, for the plaintiff's injuries. Based on those findings, the trial court determined that the Millar defendants were entitled to contractual indemnity of $18,750, plus an attorneys' fees award of

$76,186.91, against Delle Donne.[1] The trial court entered judgment against Delle Donne in that amount.

Delle Donne has appealed from the trial court's judgment, claiming that no ($0) indemnity and attorneys' fees should have been awarded to Millar. Millar has cross-appealed from that portion of the judgment awarding attorneys' fees, claiming that after Millar settled with the plaintiff, it was contractually entitled to 100%, rather than 65%, of the fees it incurred to recover contractual indemnification from Delle Donne.

For the reasons set forth herein, we affirm the trial court's final order awarding contractual indemnity and attorneys' fees to Millar. We reverse that portion of the order limiting Millar to 65% of the attorneys' fees it incurred after May 30, 2002 to recover contractual indemnification from Delle Donne, however, because we conclude that Millar was entitled to recover 100% of those fees.

### Facts

On July 30, 1997, the plaintiff, Cheryl Wickes, sustained injuries while riding on an elevator that suddenly dropped and came to an abrupt stop. The elevator on which this incident occurred was installed, serviced, and maintained by Millar Elevator Service Company ("Millar"), which was an unincorporated division of Schindler Elevator Corporation ("Schindler").[2] The building in which the elevator was located was owned by Delmont Partners, L.P. and was managed by Delle Donne & Associates (collectively "Delle Donne").[3]

---

1. *Wickes v. Delle Donne & Associates, et al,* C.A. No. 99C–014, 2002 WL 31320522, 2002 Del.Super. Lexis 262, (Del.Super.Ct., Oct. 10, 2002) (" Opinion and Order").

2. Except where otherwise noted, Millar Elevator Service Company and Schindler, whose

interests are identical, are referred to in this Opinion collectively as "Millar."

3. Because Delmont and Delle Donne are affiliated entities whose interests in this litigation are identical, except where otherwise noted,

On June 3, 1999, plaintiff Wickes filed her initial Superior Court complaint, naming as defendants Millar, Schindler, and Delle Donne. Wickes later amended her complaint on July 2, 1999, and again on April 19, 2000, to add as additional defendants Delmont, and later Elevator Equipment Company, which manufactured a component part of the elevator.

In its answers to the three complaints, Millar asserted a cross claim for indemnity, or alternatively for contribution, against Delle Donne. Millar's cross claim also sought reimbursement of its expenses, including the reasonable attorneys' fees it incurred to defend the lawsuit. In its answers, Delle Donne asserted a cross claim against Millar for contractual indemnity, common law indemnity and contribution.

Between November 5, 2001 and May 30, 2002, the defendants entered into separate settlements with the plaintiff. On November 19, 2001, Delle Donne settled with the plaintiff for $95,000. As part of that settlement, the plaintiff granted to Delle Donne a joint tortfeasor release that contained language intended to protect Delle Donne from further contribution claims, as contemplated by the Uniform Contribution Among Tortfeasors Law.[4] Because it remained an interested party for purposes of resolving the mutual cross claims asserted by and against Millar, Delle Donne was not dismissed from the case.

On February 11, 2002, Elevator Equipment Company advised the trial court that it had entered into a settlement with the plaintiff in an undisclosed amount. Elevator Equipment Company was dismissed as a party, because the other defendants decided not to pursue cross claims against it. That left Millar as the only defendant still contesting the plaintiff's negligence claims. On May 30, 2002, two days before the trial was scheduled to begin, Millar settled with the plaintiff for $80,000.

Thus, by the time of trial, plaintiff Wickes' claims against all the defendants had been settled for $175,000. The only claims that remained to be determined were the cross claims being asserted by the Delle Donne and the Millar defendants against each other for indemnification and/or contribution arising out of their individual settlements with Wickes.

In their cross claim, Delle Donne claimed that the parties' indemnification and contribution rights and obligations were governed by the "Elevator Maintenance Agreement" into which Delle Donne and Millar had entered on October 1, 1992. The Elevator Maintenance Agreement obligated Millar to indemnify Delle Donne for any liability caused by Millar's own negligence, but it did not impose a reciprocal indemnity obligation running from Delle Donne to Millar. Delle Donne acknowledged that the stated term of the Elevator Maintenance Agreement extended only to September 30 1995 (two years before Wickes suffered her injury). Delle Donne contended, nonetheless, that on the date of Wickes' injury

they are referred to in this Opinion collectively as "Delle Donne."

4. 10 *Del. C.* §§ 6301–6308. The release granted by Wickes to the Delle Donne defendants stated in relevant part:
 This release is expressly intended and shall be construed to release and protect [the Delle Donne defendants] from all claims of contribution pursuant to the Uniform Contribution Among Tortfeasors Law.... As further consideration, we agree to indemnify and save forever harmless [the Delle Donne defendants] against loss or damage because of any and all further claims, demands, or actions for further contribution or indemnity made by others on account of or in any manner resulting from the injuries, losses or damages released herein.

the Elevator Maintenance Agreement was still in effect, because there had been no attempt to terminate that agreement and both parties continued to operate under its terms.

The Millar defendants disputed that contention, urging that by its terms the Elevator Maintenance Agreement had expired. Millar took the position that on the date that Wickes was injured, the only operative contract was the "Custom Engineered Maintenance Agreement" among the parties, that became effective on September 1, 1992. That contract was terminable by either party at the end of a five-year period, or any subsequent five-year renewal period, on ninety (90) days' written notice.[5] Importantly, the Custom Engineered Maintenance Agreement contained reciprocal indemnity covenants, wherein the Delle Donne defendants and the Millar defendants each agreed "to indemnify and hold harmless the other from and against all claims, damages, losses and expenses, including reasonable attorneys' fees, resulting from bodily injury...to any person...to the extent caused by the negligent acts or omissions of the other (the indemnifying party)." That is, the Custom Engineered Maintenance Agreement—unlike the Elevator Maintenance Agreement upon which Delle Donne relied—required Delle Donne to indemnify Millar for its losses to the extent they were caused by Delle Donne's negligence.

Thus, from an indemnity standpoint, the Maintenance Agreement manifestly favored Delle Donne, whereas the Custom Engineered Maintenance Agreement clearly favored Millar. For that reason, the issue of which agreement was in effect on

the date of Wickes' injury became critical during the trial court proceedings.

In an effort to resolve that issue, Delle Donne moved for summary judgment, arguing that as a matter of law the Elevator Maintenance Agreement was operative on the date of Wickes' injury, and that that agreement required Millar to defend and indemnify Delle Donne in Wickes' personal injury action. Millar opposed the motion, arguing that the Custom Engineered Maintenance Agreement was the only contract in effect at the time of Wickes injury.

The trial court denied Delle Donne's summary judgment motion in a bench ruling, on the basis that there were material facts in dispute that required a trial.

### The Trial Court's Disposition And The Appeals Therefrom

The case was then tried before a jury. As reflected in the pretrial order, two primary issues of law remained to be litigated: (1) whether Millar owed a duty to defend and indemnify Delle Donne for Wickes' personal injury claim, and (2) whether the Custom Engineered Maintenance Agreement required Millar to defend or indemnify one or both of the Delle Donne defendants.[6] The remaining factual issues were to be determined by the jury in answers to special interrogatories. The jury answered those interrogatories, finding that the Delle Donne defendants and the Millar defendants were all negligent, and that their concurrent negligence was a proximate cause of Wickes' injury. The jury apportioned negligence among the parties as follows: the Delle Donne defendants, 65%; and the Millar defendants, 35%. The jury also found that (i) Wickes

---

5. Thus, the Custom Engineered Maintenance Agreement (unlike the Elevator Maintenance Agreement) was, by its own terms, in effect when Wickes suffered her injury on July 30, 1997.

6. Those same issues were identified in Delle Donne's trial brief and in Millar's response to that brief.

had sustained $900,000 in damages,[7] and that (ii) the October 1, 1992 Elevator Maintenance Agreement (whose term expired on September 30, 1995) was not in effect at the time Wickes was injured on July 30, 1997.

Based on that jury verdict, Delle Donne filed, and the parties briefed, a motion for the entry of an appropriate judgment.[8] That led ultimately to the entry of an order awarding judgment to Millar. Specifically, the trial court awarded Millar partial indemnity under the Custom Engineered Maintenance Agreement in the amount of $18,750, representing the difference between what Millar actually paid in the settlement and what it was legally obligated to contribute.[9] The court also awarded Millar costs, including attorneys' fees, in the amount of $76,186.91, calculated by reducing Millar's recoverable attorneys' fees by 35% (the degree of negligence attributed to Millar).

On appeal to this Court from that judgment, Delle Donne claims that the trial court erred by awarding indemnity and attorneys fees to Millar in any amount, because: (1) Millar waived its claim for contractual indemnity; (2) the trial court improperly awarded "proportional indemnity" to Millar in contravention of Delaware common law, the Uniform Contribution Among Joint Tortfeasors Law and the release granted by Wickes to Delle Donne;

and (3) Millar was not entitled to attorneys' fees.

In response, Millar contends that the trial court's award of partial indemnity and 65% of its attorneys fees incurred before May 30, 2002—the day that Millar reached its settlement with Wickes—was correct. Millar contends on its cross-appeal, however, that the trial court erred by not awarding Millar 100% of its costs (including attorneys' fees) from and after May 30, 2002, because Millar was entitled to full reimbursement of all the costs it incurred after that date to recover the contractual indemnification that the Court ultimately awarded.

We next address these claims.

### Analysis

### The Argument That Millar Waived Whatever Indemnity Claim It Had

To put Delle Donne's first claim of error in context, the jury found that at the time of Wickes' injury, the operative contract was the Custom Engineered Maintenance Agreement. In that contract, Millar and Delle Donne reciprocally agreed to indemnify each other against losses, costs and expenses arising out of personal injuries to any person, to the extent the injury was caused by the other party's negligence.

---

7. Because Wickes had previously settled her claim for $175,000, the $900,000 jury verdict was advisory only, having been entered for purposes of determining whether the settlement was reasonable and what the parties' respective indemnity and contribution obligations (if any) should be.

8. Delle Donne's submission was styled as a motion to "mold the verdict." Although that term that does not appear to be part of Delaware jurisprudence, the trial court properly regarded the motion, and Millar's response thereto, as requests to approve the form of the judgment upon the rendering of a special

verdict, under Superior Court Civil Rule 58(2).

9. Because Delle Donne was found to be 65% liable and Millar 35% liable, Delle Donne was obligated to pay 65% of the overall $175,000 settlement, or $113,750; and Millar was obligated to pay 35%, or $61,250. Because Millar had contributed $80,000, yet was liable for only $61,500, it overpaid by $18,750, which was the amount of partial indemnity (exclusive of attorneys' fees) that the trial court awarded to Millar.

Based on the jury's finding, the trial court determined, as a legal matter, that Delle Donne was obligated to indemnify Millar on the basis of Delle Donne's proportional negligence; that is, Delle Donne was obligated to contribute 65% of the $175,000 that all defendants had paid to Wickes to settle her claim. By so concluding, the trial court rejected Delle Donne's contention that Millar had waived its right to seek contractual indemnity.

Delle Donne does not contest any of the jury's findings. It claims, however, that even if the Custom Engineered Maintenance Agreement was the operative contract, the trial court erred by not concluding that Millar had waived its right to seek indemnity under that agreement. In this Court, Delle Donne contends, as it did below, that Millar waived any indemnity right because it failed to identify, or rely upon, the Custom Engineered Maintenance Agreement as the basis for its indemnity claim.

■ On an appeal from a decision of the Superior Court, we review conclusions of law *de novo*. The trial court's factual findings will be accepted "if they are sufficiently supported by the record and are the product of an orderly and logical deductive process."[10] We conclude that Delle Donne's waiver argument finds no support in the factual record or in applicable legal principles. On the other hand, the trial court's determination that no

waiver had occurred is adequately supported by the record and in law.

■ First, in its answer to the original and the amended complaints, Millar consistently raised, as an affirmative defense, the following claim:

To the extent there exists any contract governing the allegations of negligent conduct against Millar and to the extent the contract would inure to the benefit of Millar, Millar hereby pleads as an affirmative defense the contractual provisions and avers that it did not owe any duty to the plaintiff or that the contract relieves Millar of any liability in this matter.

■ Millar also asserted, in each of its answers to the various complaints, a cross claim for contribution *or* indemnity from Delle Donne, plus reimbursement of its expenses, including reasonable attorneys' fees, in defending the lawsuit.[11] The only conceivable basis on which Millar could assert a right to indemnity was by an express written agreement, because implied indemnity was legally unavailable to Millar as a party to a written contract with Delle Donne.[12] Although Millar's theory of recovery was inartfully expressed in that Millar did not identify the source of its claimed indemnity, Millar's answer and cross claim were, nonetheless, sufficient to put Delle Donne on notice of the possibility that Millar might seek indemnification on

10. *Stegemeier v. Magness*, 728 A.2d 557, 561 (Del.1999) (quoting *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del.1972)).

11. Paragraph 3 of Millar's cross claim relevantly stated:
 [I]n the event it is judicially determined that plaintiff is entitled to recover damages against [Millar], which liability is expressly denied, [Millar] demand judgment over and against co-defendants [Delle Donne] for the amount of any judgment that might be en-

tered in favor of plaintiff and against [Millar], plus all expenses in conducting the defense of this lawsuit, including attorneys' fees.

12. *Rock v. Delaware Electric Cooperative, Inc.*, 328 A.2d 449, 455 (Del.Super.Ct.1974) ("The law will not imply a right of indemnity where the parties have entered into a written contract with express indemnification provisions.")

the basis of the Custom Engineered Maintenance Agreement.[13]

Second, during the discovery process Millar gave notice that the contract upon which it was relying as the basis for its indemnity claim was the Custom Engineered Maintenance Agreement. That notice was relevant to the waiver issue, because as the trial court observed:

> Under the notice pleading requirements of Superior Court 8(a), all that is required is a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment for the relief to which the party deems itself entitled. The pleading need not set out in detail the facts upon which it is based as long as it gives the other party fair notice of what the claim is and the grounds upon which it rests. The details of the claim can be obtained through...discovery.... [14]

In this case, Delle Donne employed discovery by interrogatories to identify which maintenance agreement Millar contended was in force on the date of the accident. In its response to those interrogatories, Millar identified its Custom Engineered Maintenance Agreement as the applicable contract.

Third, Millar also identified the Custom Engineered Maintenance Agreement as the applicable contract in its response to Delle Donne's motion for summary judgment. That response referred to the terms and conditions limiting Millar's responsibility for loss and damage—terms and conditions which contained the reciprocal indemnity clause upon which Millar was relying.

Finally, Millar's trial brief and its answer to Delle Donne's trial brief, both of which were filed after Millar had settled with the plaintiff, identified the reciprocal indemnity clause in the Custom Engineered Maintenance Agreement as the relevant provision that governed the parties' respective indemnity obligations.

We conclude, for these reasons, that the trial court did not err in rejecting Delle Donne's contention that Millar had waived its right to recover contractual indemnity from Delle Donne.[15]

### The Claim That Millar Was Not Entitled to Any Indemnity

Delle Donne's second claim consists of two alternative arguments, whose thrust is that in concluding that Millar should be indemnified based on the jury's 65%/35% liability allocation, the trial court erred as

**13.** An allegation, even if it is vague or lacking in detail, is nonetheless well pleaded if it puts the opposing party on notice of the claim being brought against it. *Precision Air v. Standard Chlorine of Delaware, Inc.*, 654 A.2d 403, 408 (Del.1995).

**14.** Opinion and Order at 14.

**15.** Neither of the cases cited by Delle Donne supports its position. In *American Insurance Co. v. Material Transit, Inc.*, 446 A.2d 1101 (Del.Super.Ct.1982), the Superior Court upheld the grant of a motion to dismiss under Rule 12(b)(6), not for insufficiency of notice and/or waiver of a claim, but for failure to allege any contract upon which a claim for indemnification could be based. In *Precision Air v. Standard Chlorine, supra*, 654 A.2d 403, this Court affirmed the denial of a motion to dismiss a contractual indemnity claim, on the ground that although the exclusivity provision of the Worker's Compensation Act precluded the owner of a structure from asserting a contribution claim against the contractor that had paid benefits to its injured employee, that provision did not bar a contractual indemnity claim by the owner against the contractor. *Precision Air* does not support Delle Donne's position that Millar's pleading was insufficient for failure to reference the Custom Engineered Maintenance Agreement as the source of its indemnity claim.

a matter of law. Our review of that claim is for legal error and *de novo*.[16]

■ Delle Donne first argues that the award to Millar, although labeled as one for indemnity, was in substance an award of contribution that was barred by the Uniform Contribution Among Tortfeasors Law and by the release provided by the plaintiff to Delle Donne. Delle Donne's second argument is that even if Millar was entitled to be indemnified in the abstract legal sense, it was not entitled to that relief in this concrete factual setting.

Delle Donne's first argument must be rejected, because it rests on a false premise. The argument's inner logic is not clearly articulated, but appears to run as follows: in its Opinion and Order the trial court determined to award "proportional indemnity" to Millar, measured by the allocation-of-liability percentages determined by the jury (i.e., 65% for Delle Donne; 35% for Millar). Because "proportional indemnity" is not a recognized basis for relief under Delaware law and has never been the basis for recovering indemnification, Delle Donne argues, the only conceivable ground for a recovery was common law contribution. But, common law contribution to Millar was legally foreclosed by the plaintiff's joint tortfeasor release to Delle Donne and by the Uniform Contribution Among Tortfeasors Law. Therefore by awarding "proportional indemnity" to Millar, the trial court necessarily erred as a matter of law.

This argument rests on the flawed premise that the award of "proportional indemnity" was, legally speaking, a nullity, and that therefore (and by process of elimination), the trial court must have been awarding contribution. That contrived logic distorts what the trial court held and ignores what it actually did. Although the trial court did describe the nature of Millar's claim as "proportional indemnity," the court also acknowledged that "proportional indemnity" has been described in other terms, such as:

> "comparative implied indemnity" or "partial indemnity," the effect of which is to "apportion[ ] a part of the liability from one party to another [just as traditional contribution would, but without the procedural requirements contained within contribution statutes]."[17]

■ A fair reading of the trial judge's Opinion and Order makes it abundantly plain that the court was not purporting to, nor did it, award common law contribution. Rather, the court was simply enforcing the reciprocal indemnity provisions of the Custom Engineered Maintenance Agreement that the jury found to be controlling. In so doing, the court was awarding what is more accurately described as partial contractual indemnity measured by proportional negligence. The indemnity award was not based on, and it did not contravene, the Uniform Contribution Among Tortfeasors Law. Indeed, that statute expressly provides that it "does not impair any right of indemnity under existing law."[18] Moreover, existing Delaware law gives a party the right to contractual indemnity where there is concurrent negligence between the indemnitor and the indemnitee.[19] Existing Delaware law also permits an indemnitee to recover partial contractual indemnity for losses caused by

---

16. *City of Wilmington v. Parcel of Land,* 607 A.2d at 1165–66 (Del.1992).

17. Opinion and Order, at 18 (footnote citation omitted).

18. 10 *Del. C.* § 6305.

19. See, *e.g., Cumberbatch v. Board of Trustees, Delaware Technical & Community College,* 382 A.2d 1383, 1386 (Del.Super.Ct.1978).

the indemnitor's negligence,[20] and it permits that partial contractual indemnity to be measured by the percentages of liability determined by a jury—precisely what was done here.[21] Because the trial court awarded Millar contractual partial indemnity for which there was ample precedent in Delaware law, the premise of Delle Donne's argument collapses, as does the argument itself.

■ Delle Donne's alternative position is that even if a partial contractual indemnity award was permissible under Delaware law, the trial court still erred by awarding indemnity to Millar in this particular case. The reason, Delle Donne urges, is that the amount of that indemnity should have been computed on the basis of the $900,000 damage figure found by the jury, rather than on the basis of the $175,000 figure actually paid in settlement. On that basis, Delle Donne maintains, Millar's percentage of liability (35%) would have resulted in Millar being liable to contribute the amount of $315,000 (35% × $900,000) to satisfy the judgment. Therefore, and by application of basic principles of indemnity, Millar would have no indemnification claim against Delle Donne unless (and only to the extent that) Millar paid Wickes more than $315,000. Because Millar paid Wickes only $80,000, Millar was entitled to no ($0) indemnity. Not only that, Delle Donne argues, the trial court's indemnity award effectively required Delle Donne to indemnify Millar for its (Millar's) own negligence, as distinguished from only Delle Donne's negligence, as the applicable contract required.

This argument, like that which preceded it, has no basis in law and ignores the reality of what actually occurred. The reality is that the plaintiff, Wickes, agreed to accept $175,000 in total settlement of her claim, not the $900,000 later determined by the jury. The contract that the jury found to be in effect on the date of the accident mandated indemnity for "claims, damages, *losses*, and expenses, including reasonable attorneys' fees *resulting from bodily injury* . . . to the extent caused by the negligent acts of . . . the indemnifying party . . ." Because Wickes agreed to settle her case before the trial and the jury verdict, the "loss . . . caused by [her] bodily injury" was the $175,000 that the defendants actually paid to her, not the hypothetical $900,000 figure the jury arrived at for different purposes. The only relevance of the $900,000 jury determination was to establish that the $80,000 amount that Millar had paid to settle Wickes' claim against it was reasonable and a proper subject for indemnification.

Accordingly, the trial court committed no error in awarding to Millar contractual indemnity of $18,750 (exclusive of attorneys' fees), representing the amount Millar paid above and beyond what it was legally obligated to contribute to the overall settlement.

### The Claim That The Award of Proportional Attorneys' Fees To Millar Was Erroneous

Delle Donne's next claim is that the trial court erroneously awarded to Millar 65% of its costs, including attorneys' fees, incurred in defending the plaintiff's claim against Millar in her lawsuit. Because the issue presented is one of law, our review of that claim is *de novo*.[22]

---

**20.** *Precision Air,* 654 A.2d at 407–9.

**21.** *Seither v. Balbec Corp.,* C.A. No. 90C–11–257, 1995 WL 465187 (Del.Super.Ct., July 27, 1995) (cited with approval in Opinion and Order, at 18–19).

**22.** *City of Wilmington v. Parcel of Land, supra,* 607 A.2d at 1166.

Delle Donne first contends that the award of partial, *i.e.*, proportionate, attorneys' fees and costs to Millar was erroneous, because attorneys' fees would only be appropriate if Millar were entitled to indemnification, which was not the case here. That argument fails, because we have upheld the trial court's ruling that Millar was entitled to contractual indemnity.

 Delle Donne's second contention is that the trial court erred because even if Millar was otherwise entitled to indemnification, Millar's own adjudicated negligence precludes an award of attorneys' fees and costs. This contention ignores the relevant language of the indemnity provision of the Custom Engineered Maintenance Agreement. That provision obligated Delle Donne to indemnify Millar and hold it harmless "from and against all...losses and expenses, including reasonable attorneys' fees, resulting from bodily injury...to any person...to the extent cause by the negligent acts...of the other (the indemnifying party)." Attorneys' fees and expenses may be recovered under an indemnification agreement if they are incurred as a result of defending the claims that are the subject of the duty to indemnify. That is true even where the indemnity clause does not expressly mention attorneys' fees.[23] Where, as here, the indemnity agreement does expressly include attorneys' fees, *a fortiori*, they are recoverable under the terms of that agreement.

In this case, the contract terms that governed Millar's entitlement to be indemnified for its attorneys' fees were the same terms that governed Millar's entitlement to be reimbursed for its other costs and expenses, that is, to the extent Millar incurred losses by reason of Delle Donne's negligence. Because Delle Donne's proportional negligence was 65%, the trial court correctly awarded Millar 65% of the attorneys' fees and other litigation costs Millar incurred to defend the plaintiff's personal injury claim.

### Millar's Cross Appeal For Attorneys' Fees

On the motion for entry of judgment, Millar contended that it was entitled to 100% of all costs, including attorneys' fees, that it incurred after settling with Wickes on May 30, 2002, because after that date, all of Millar's expenses were incurred for the sole purpose of enforcing Millar's contractual right to indemnity.[24] The trial court, however, limited the award to 65% of all litigation costs, including the costs Millar had incurred after May 30, 2002. The court did that without addressing Millar's argument that the costs Millar incurred after settling with Wickes were 100% indemnifiable.

 Millar agrees that the trial court correctly limited the recovery of its pre-May 30 litigation expenses to 65% of those costs. It urges, however, that the court erred by not awarding full reimbursement of its post-May 30, 2002 litigation expenses. That claim of error is the subject of Millar's cross appeal. Because this claim involves the correct interpretation of a contract, which is an issue of law, we review the trial court's ruling for legal error.[25]

---

23. *Oliver B. Cannon and Son v. Dorr–Oliver*, 394 A.2d 1160, 1165 (Del.1978); *Eastern Memorial Consultants v. Gracelawn Memorial Park, Inc.*, 364 A.2d 821, 825 (Del.1976).

24. Because Millar was the last defendant to settle with the plaintiff, once that settlement was finalized, the plaintiff's claim was extinguished, obviating the need for any defense.

25. *Aetna Casualty & Surety Co. v. Kenner*, 570 A.2d 1172, 1174 (Del.1990).

We agree that on this single issue the trial court reversibly erred. Millar was contractually entitled to full reimbursement of the litigation costs, including reasonable attorneys' fees that it incurred after May 30, 2002.

■ The indemnity provision in the Custom Engineered Maintenance Agreement is very broad in scope. It requires Delle Donne to indemnify and hold Millar harmless from and against all expenses, including reasonable attorneys' fees. After May 30, 2002, all of Millar's litigation expenses were incurred to enforce its contractual indemnity claim. The expenses incurred in that enforcement effort included participating in a one-week trial, engaging in post-trial briefing, and defending this appeal. Our case law recognizes that where, as here, a party such as Millar is contractually entitled to be held harmless, that party is entitled to its costs and attorneys' fees incurred to enforce the contractual indemnity provision.[26] Any other outcome would not result in Millar being held harmless. Accordingly, the trial court erred by not interpreting the contractual indemnity provision to require Delle Donne to indemnify Millar for the costs, including reasonable attorneys' fees, Millar incurred to enforce that provision.

### Conclusion

To the extent the judgment of the trial court did not award Millar full reimbursement of its post-May 30, 2002 costs and expenses, it is reversed. In all other respects the judgment is affirmed. The case is remanded for further proceedings consistent with this Opinion.

26. *Pike Creek Chiropractic Center, P.A. v. Robinson,* 637 A.2d 418, 422 (Del.1994).