# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ASHLAND LLC; INTERNATIONAL
SPECIALTY PRODUCS INC. ISP
ENVIRONMENTAL SERVICES INC.;
and ISP CHEMCO LLC,

      Plaintiff/Counterclaim
      Defendants,

              v.

THE SAMUEL J. HEYMAN 1981
CONTINUING TRUST FOR LAZARUS
S. HEYMAN; et al.,

      Defendant/Counterclaim
      Plaintiffs.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N15C-10-176 EMD CCLD

Submitted: September 15, 2020
Decided: November 10, 2020

*Upon Plaintiff-Counterclaim Defendant Ashland LLC's Motion for Partial Summary Judgment*
***DENIED***

*Upon Defendant-Counterclaim Plaintiff The Samuel J. Heyman 1981 Continuing Trust for Lazarus S. Heyman's Motion for Partial Summary Judgment*
***GRANTED***

Christopher Viceconte, Esquire, Gibbons P.C., Wilmington, Delaware, William S. Hatfield, Esquire, Camille V. Otero, Esquire, Jennifer A. Hradil, Esquire, Joshua Elias, Esquire, Gibbons P.C., Newark, New Jersey, *Attorneys for Plaintiffs and Counterclaim Defendants.*

William M. Lafferty, Esquire, John P. DiTomo, Esquire, Thomas P. Will, Esquire, Miranda N. Gilbert, Esquire, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware, Andrew J. Rossman, Esquire, Jonathan B. Oblak, Esquire, Tyler G. Whitmer, Esquire, Nicholas Hoy, Esquire, Quinn Emanuel Urquhart & Sullivan, LLP New York, New York, *Attorneys for the Defendants and Counterclaim Plaintiffs.*

**DAVIS, J.**

# I. INTRODUCTION

This is a breach of contract case assigned to the Complex Commercial Litigation Division of this Court. The causes of action arise from environmental liability allocations under a Stock Purchase Agreement, dated May 30, 2011 (the "SPA"), and statutory law. Plaintiffs Ashland LLC, International Specialty Products Inc. ("ISP"), ISP Environmental Services Inc. ("IES") and ISP Chemco LLC ("Chemco") (collectively "Ashland") allege that Defendants The Samuel J. Heyman 1981 Continuing Trust for Lazarus S. Heyman, *et al.* (the "Heyman Defendants"),[1] must also indemnify Ashland for attorneys' fees incurred in this action. Ashland and the Heyman Defendants have filed cross-motions for summary judgment.

Ashland filed its Plaintiffs/Counterclaim Defendants' Motion for Summary Judgment as to Their Entitlement to Their Attorneys' Fees and Expenses Incurred in This Action (the "Ashland Motion") on August 21, 2020.[2] On July 24, 2020, the Heyman Defendants filed a Motion for Partial Summary Judgment (the "Heyman Motion").[3] The Court held a hearing on the motions on September 15, 2020.[4] At the conclusion of the hearing, the Court took the matters under advisement.

This is the Court's decision on the motions. For the reasons set forth more fully below, the Ashland Motion is **DENIED** and the Heyman Motion is **GRANTED**. The Court holds that, except as to SPA Section 8.2(c), the SPA does not provide for prevailing party reimbursement of attorneys' fees incurred in connection with direct claims between the parties for breach of the SPA.

---

[1] The Heyman Defendants include Linden Property Holdings LLC ("LPH").
[2] D.I. No. 1081.
[3] D.I. No. 1082.
[4] D.I. No. 1095.

## II.     RELEVANT FACTS

This litigation involves, in part, property located at 4000 Road to Grasselli, Linden, New Jersey (the "Linden Property").[5]  The Linden Property is subject to an Administrative Consent Order ("ACO") with the New Jersey Department of Environmental Protections ("NJDEP") and liabilities under the Industrial Site Recovery Act ("ISRA").[6]  In 1991, ISP's subsidiary, IES, became the owner of the Linden Property and assumed all liabilities for its remediation.[7]

### A.  BACKGROUND

In June 1989, NJDEP and ISP's predecessor, GAF Chemicals entered into the ACO covering both on-site and off-site remedial obligations at the Linden Property.[8]  In August 2005 and July 2011, the NJDEP issued No Further Action letters (the "NFAs") for on-site soil and groundwater after IES completed its on-site remedial work.[9]

NJDEP continued to pursue ISP for off-site liabilities at the Linden Property.[10]  NJDEP requested that ISP complete a supplemental off-site investigation followed by an ecological risk assessment ("ERA") for off-site contamination pursuant to the ACO.[11]  ISP conducted the off-site investigation and the first step of the ERA, but did not complete the remaining steps because it requested clarification and a meeting with the NJDEP.[12]

---

[5] *See Ashland LLC v. The Samuel J. Heyman 1981 Continuing Trust for Heyman*, 2020 WL 1231100 at *1 (Del. Super. Feb. 25, 2020).  For a more fulsome discussion of the facts in this civil proceeding, reference should be made to the Court's February 25, 2020 decision.
[6] *See id.*
[7] *See id.*
[8] *See id.*
[9] *See id.* at *2.
[10] *See id.*
[11] *See id.*
[12] *See id.*

On May 3, 2006, NJDEP, IES and Chemco amended the ACO confirming that IES has responsibility for the ACO.[13] NJDEP also reiterated that an ERA was necessary.[14]

In June 2007, NJDEP filed a complaint against ISP (the "NJDEP Complaint") asserting remedial and natural resource damage ("NRD") claims related to the Arthur Kill and Piles Creek waterways in connection with the Linden Property.[15]

In June 2011, ISP entered into a Consent Judgment (the "Consent Judgment") with the NJDEP in which the Piles Creek claims were dismissed with prejudice, but "claims associated with the Arthur Kill Waterway" were expressly preserved and dismissed without prejudice.[16]

In August 2011, Ashland acquired ISP, IES, and Chemco from the Heyman Defendants for approximately $3.2 billion.[17] Ashland acquired ISP through the SPA.[18] Under the SPA, IES conveyed the Linden Property back to LPH for one dollar.[19] Defendant LPH presently owns the Linden Property.[20]

## B. THE LINDEN PROPERTY OBLIGATIONS UNDER THE SPA

The SPA establishes the parties' obligations regarding the Linden Property. Section 2(e) to Schedule 5.19 provides:

> In connection with the Linden Transfer, the Seller Parties shall assume all Liabilities to the extent related to or arising from or existing at the Linden Property, including Liabilities arising under or relating to (i) Environmental Laws, provided that such Liabilities shall not include any off-site migration or disposal of Hazardous Materials from the Linden Property prior to the Closing, any claims or damages associated with any off-site migration or disposal of Hazardous Material from the Linden Property prior to the Closing, and for the avoidance of doubt, any off-site contamination of soils, groundwater or sediments, any third party superfund sites including the Newark Bay Complex, any natural resources

---

[13] *See id.*
[14] *See id.*
[15] *See id.*
[16] *Id.*
[17] *See id.* at *3.
[18] *See id.*
[19] *See id.*
[20] *See id.*

damages or exposure claims relating to operations or discharges prior to Closing, (ii) the Linden Contracts, (iii) any personal property located at the Linden Property, (iv) the Linden Litigation, or (v) the Linden Transfer (including any Liabilities to the extent arising by virtue of the delivery of a limited warranty deed, but excluding any Liabilities arising out of or relating to fraudulent conveyance or similar liability), in each case, other than as set forth in the proviso in clause (i) above, whether arising before, on or after the Closing Date (the "Linden Excluded Liabilities").[21]

Section 2(f) to Schedule 5.19 states:

In connection with the Linden Transfer, the Seller Parties shall be responsible, at their sole cost and expense, for compliance, if applicable, with any requirements of the Industrial Site Recovery Act ("ISRA") and, if ISRA applies to the Linden Transfer, Seller Parties shall (i) within five (5) Business Days after execution of this Agreement, make any required filings or notifications (such as a General Information Notice, as defined under ISRA) to the New Jersey Department of Environmental Protection ("NJDEP"), and (ii) use reasonable best efforts to, prior to closing, make all other filings, undertake all other measures, including where required undertaking any site investigation or Remedial Action required by ISRA. In addition, the Seller Parties shall use reasonable best efforts to amend any consent decree or other binding agreement with any Governmental Entity relating to the Linden Excluded Liabilities, and to replace or substitute any related financial assurance (including any bond or letter of credit), to include the name of the Linden Transferee following the Linden Transfer and, if permitted by NJDEP, to remove the name of ISP or any of the Companies therefrom.[22]

The Heyman Defendants attempted to terminate the ACO. However, the NJDEP declined LPH's termination request in December 2013 because "the scope of the ACO includes discharges off-site to Piles Creek and the Arthur Kill."[23]

LPH initially established a remediation funding source ("RFS") under the ACO with a 2011 letter of credit, satisfying SPA Section 2(f)'s requirement that the Heyman Defendants would "replace or substitute any related financial assurance" for the Linden Property's obligations.[24] LPH later posted a smaller amount and eventually terminated

---

[21] App. to Defs./Countercl. Pls.' Br. in Supp. of Their. Mot. for Partial Summ. J. HA0116. Hereinafter "SPA __."
[22] Id.
[23] Id. at *8-*9.
[24] Id. at *9; SPA Sch 5.19, § 2(f).

5

its smaller letter of credit forcing IES to establish its own letter of credit to avoid severe penalties threatened by the NJDEP.[25] Ashland wrote to LPH that it would not take responsibility for the Linden Property off-site liabilities and this dispute led to the current action.[26]

## C. ENSUING LITIGATION

On August 2, 2019, Ashland and the Heyman Defendants filed motions for partial summary judgment.[27] The Court held a hearing on the motions on October 11, 2019.[28] After taking the motions under advisement, the Court held that the Heyman Defendants breached their contractual obligation under SPA Section 2(f) to expend reasonable best efforts to amend the ACO to include LPH and remove ISP (or IES) by instead attempting to terminate the ACO outright.[29] The Court also held that the Heyman Defendants breached their obligation under Section 2(f) to "replace any financial assurance" required under the ACO by first posting a smaller amount and then terminating the letter of credit posted as the RFS.[30]

The Court further ruled that SPA Section 4(a) of Schedule 5.19 required the Heyman Defendants to indemnify Ashland for losses related to the Linden Excluded Liabilities, and that the general indemnification provision in SPA Section 7.2 required the Heyman Defendants to indemnify Ashland for any losses related to any breach of any covenant or agreement.[31]

---

[25] *See id.*
[26] *See id.*
[27] *See id.*
[28] *See id.*
[29] *See id.* at *13.
[30] *Id.*
[31] *See id.* at *16.

**D. INDEMNIFICATION PROVISIONS—SPA SECTION 7.2 AND SECTION 4(a) OF SCHEDULE 5.19**

The SPA contains indemnification provisions. Relevant here are SPA Section 7.2 and Section 4(a) of Schedule 5.19. SPA Section 7.2 and Section 4(a) of Schedule 5.19 provide that the Heyman Defendants will indemnify Ashland in certain circumstances. SPA Section 7.2 sets out the Heyman Defendants' general indemnification obligations:

> Section 7.2 <u>Indemnification by the Seller Parties</u>. Subject to the limitations set forth in this Article VII, each Seller Party hereby agrees that from and after the Closing it shall, jointly and severally, indemnify, defend and hold harmless, without duplication, Buyer, its Affiliates and their respective directors, officers, shareholders, members, fiduciaries, trustees and employees (other than the Employees) and their heirs, successors and permitted assigns, each in their capacity as such (the "<u>Buyer Indemnified Parties</u>") from and against any and all Losses actually suffered or incurred by any of the Buyer Indemnified Parties, to the extent arising out of:
>
> . . .
>
> b) any breach of any covenant or agreement of the Seller Parties . . .[32]

Section 4(a) of Schedule 5.19 establishes the Heyman Defendants' indemnification obligations with respect to the Linden Excluded Liabilities:

> 4. <u>Indemnification</u>
>
> Subject to the limitations set forth in paragraph 4(c) of this Schedule:
>
> (a) Each Seller Party, hereby agrees that from and after the Closing it shall, jointly and severally, indemnify, defend and hold harmless, without duplication, the Buyer Indemnified Parties from and against any and all Losses actually suffered or incurred by any of the Buyer Indemnified Parties, to the extent arising out of (i) the Wayne Excluded Liabilities and the Linden Excluded Liabilities . . .[33]

Both provisions state that the Heyman Defendants will indemnify Ashland against "Losses." Section 1.1 defines Losses as:

---

[32] SPA § 7.2.
[33] *Id*. at Sch. 5.19, §4.

. . . with respect to any Indemnified Party, and all losses, liabilities, claims, obligations, judgments fines, settlement payments, award or damages of any kind actually suffered or incurred by such Indemnified Party after Closing (together with all reasonably incurred cash disbursements, costs and expenses, including costs of investigation, defense and appeal and *reasonable attorneys'* and consultants' fees and expenses)*, whether or not involving a Third Party Claim.* [34]

The definition of Third Party Claim is contained in SPA Section 7.5. SPA Section 7.5 defines Third Party Claim as:

. . . any written claim or demand for which an indemnifying party (an "Indemnifying Party") may have liability to any Indemnified Party hereunder, other than those relating to Taxes . . . asserted against or sought to be collected from any Indemnified Party by a third party . . . .[35]

### E. SPA SECTION 8.2(C)

Article VIII of the SPA governs termination of the SPA. SPA Section 8.2 talks to the "Effect of Termination." Section 8.2(b) requires Ashland to pay a fee if Ashland terminates the agreement under Section 8.1(f).[36] SPA Section 8.2(c) addresses fee-shifting between Ashland and the Heyman Defendants if there has been a termination and the Heyman Defendant need to bring suit to collect the fee. Specifically, SPA Section 8.2(c) provides:

The parties acknowledge that the agreements contained in Section 8.2 are an integral part of the Transactions, and that, without these agreements, the parties would not enter into this Agreement; accordingly, if Buyer fails to promptly pay the amount due pursuant to Section 8.2(b), and, in order to obtain such payment, the Seller Parties commence a suit that results in a judgment against Buyer for the amount set forth in Section 8.2(b), *Buyer shall pay to the Seller Parties their costs and expenses (including attorneys' fees) in connection with such suit, together with interest on such amount or portion thereof at the Interest Rate in effect on the date such payment was required to be made through the date of payment.*[37]

---

[34] *Id*. at § 1.1. (emphasis added).
[35] *Id*. at § 7.5.
[36] *Id*. at § 8.2(c).
[37] *Id.* (emphasis added).

## F. PROCEDURAL POSTURE

Ashland commenced this action on October 20, 2015. On January 6, 2016, the Heyman Defendants filed their Answer to the Complaint and Counterclaims. On October 26, 2017, Ashland filed its Second Amended Complaint seeking (i) declaratory judgment for breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; (iii) fraud; (iv) unjust enrichment against the Heyman Defendants; (v) cost recovery and contribution under the Spill Act; and (vi) unjust enrichment against LPH.[38]

On August 2, 2019, both Ashland and the Heyman Defendants filed motions for partial summary judgment. Ashland filed its motion on Count I and Counterclaims II and III and the Heyman Defendants filed their motions on Count I, II, III, IV and VI as well as on Counterclaims II and III.[39] The Court granted Ashland's motion with respect to breach of contract claims relating to the ACO under Count I and Counterclaims II and III, finding that the Heyman Defendants breached SPA Section 2(f).[40] The Court denied Ashland's motions on all other grounds. The Court also denied the Heyman Defendants' motion but held that Ashland's unjust enrichment claims would not go forward.[41]

On July 24, 2020, the Heyman Defendant filed the Heyman Motion. Ashland filed the Ashland Motion on August 21, 2020. The Court held a hearing on the motions on September 15, 2020. The Heyman Motion and the Ashland Motion both seek summary judgment on Ashland's claim for attorneys' fees incurred in connection with litigating the contract claims and counterclaims under the SPA.

---

[38] *See Ashland*, 2020 WL 1231100, at *9 (Del. Super. 2020).
[39] *See id.*
[40] *See id.* at *14.
[41] *See id.* at *17.

## III.   PARTIES' CONTENTIONS

### A. THE HEYMAN DEFENDANTS' CONTENTIONS

The Heyman Defendants are moving for summary judgment on Ashland's claim for attorneys' fees. The Heyman Defendants argue that, under the "American Rule," Ashland is responsible for its own attorneys' fees for litigation brought against the Heyman Defendants under the SPA. The Heyman Defendants contend that the absence of clear and unequivocal fee-shifting language in the SPA with respect to indemnification claims means that the parties did not intend to shift fees as to those types of claims. As further support, the Heyman Defendants reference another provision of the SPA that sets out fee-shifting to the prevailing party in litigation between the Heyman Defendants and Ashland.

### B. ASHLAND'S CONTENTIONS

Ashland seeks summary judgment in its favor on the attorneys' fee issue. Ashland argues that the SPA's plain language entitles them to attorneys' fees. Ashland claims that the SPA's indemnification provisions and the SPA's definition of "Losses" provides recovery of attorneys' fee. Ashland notes that the Court ruled that the Heyman Defendants must indemnify and hold harmless Ashland for Losses arising out of the Linden Excluded Liabilities and the Seller's breach of contract. Ashland then references the definition of "Losses" to include reasonable attorneys' fees "whether or not involving a Third Party Claim." Therefore, under the plain language of the contract Ashland contends that it is entitled to reasonable attorneys' fees under the SPA's indemnification provisions.

## IV.   STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to

10

determine whether genuine issues of material fact exist, "but not to decide such issues."[42]

Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[43] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[44] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[45] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[46]

Where the parties have filed cross motions for summary judgment and have not argued that there are genuine issues of material fact, "the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[47] Neither party's motion will be granted unless no genuine issue of material fact exists and one of the parties is entitled to judgment as a matter of law.[48]

## V. DISCUSSION

Delaware follows the American Rule, "which provides that each party is generally expected to pay its own attorneys' fees."[49] The Court should not interpret indemnification

---

[42] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[43] *Id.*
[44] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244, at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").
[45] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).
[46] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).
[47] Super. Ct. Civ. R. 56(h).
[48] *E.I. DuPont de Nemours and Co. v. Medtronic Vascular, Inc.*, 2013 WL 261415, at *10 (Del. Super. Jan. 18, 2013).
[49] *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017).

provisions "in an expansive way that would be inconsistent with the American Rule."[50]

Indemnification provisions "are presumed not to require reimbursement for attorneys' fees incurred as a result of substantive litigation between the parties to the agreement absent a clear and unequivocal articulation of that intent."[51] "There is no specific language that must be used in order for an indemnity provision to provide for recovery in first-party actions."[52] However, a party is not entitled to attorneys' fees under an indemnification provision "when there is no specific language in the indemnification provision ... that covers fee-shifting."[53]

The Court previously held that the Heyman Defendants breached Section 2(f) of Schedule 5.19, which relates to the Linden Excluded Liabilities.[54] Under Section 4(a) of Schedule 5.19, the Heyman Defendants must indemnify "against any and all Losses" incurred by Ashland to the extent arising out of the Linden Excluded Liabilities.[55] The Heyman Defendants must also indemnify Ashland against "Losses actually suffered or incurred by" Ashland arising out of any breach of any covenant or agreement by the Heyman Defendants.[56] Therefore, the Heyman Defendants must indemnify against Losses related to their breach of Section 2(f). Applying the law discussed above, however, the parties must have intended clearly and unequivocally to overcome the presumption against fee-shifting under the American Rule for Ashland to recover attorneys' fees under the indemnification clauses.[57]

---

[50] *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466, at *2 (Del. Super. Mar. 29, 2012). *See also Nasdi Holdings, LLC v. North American Leasing, Inc.*, 2020 WL 1865747, at *5 (Del. Ch. Apr. 13, 2020); *Senior Hous. Capital, LLC v. SHP Senior Hous. Fund, LLC,* 2013 WL 1955012, at *45 (Del. Ch. May 13, 2013).

[51] *TranSched Sys. Ltd.*, 2012 WL 1415466, at *2

[52] *Deere & Co. v. Exelon Generation Acqs., LLC,* 2016 WL 6879525, at *2 (Del. Super. Nov. 22, 2016).

[53] *Senior Hous.*, 2013 WL 1955012, at *45

[54] *See Ashland LLC*, 2020 WL 1231100 at *14 (Del. Super Feb. 25, 2020).

[55] SPA Sch. 5.19, § 4(a).

[56] *Id*. § 7.2(b).

[57] *See TranSched Sys. Ltd.*, 2012 WL 1415466, at *2.

The SPA's plain language of the does not show a clear and unequivocal intent to shift fees. Article I of the SPA defines Losses as including reasonable attorneys' fees, "whether or not involving a Third Party Claim."[58] Article I defines Third Party Claim as having "the meaning set forth in Section 7.5(a)."[59] Section 7.5(a) defines Third Party Claim as:

> . . . any written claim or demand for which an indemnifying party (an "Indemnifying Party") may have liability to any Indemnified Party hereunder, other than those relating to Taxes . . . asserted against or sought to be collected from any Indemnified Party by a third party.[60]

Third Party Claim is a defined term involving a written demand against an Indemnified Party. It is not a generic term for third party claims and its use in the SPA's definition of Losses does not imply clearly and unequivocally that first party claims are included. The definition of Losses also lacks explicit language applying to first-party claims.

Recently, the Court of Chancery came to the same conclusion when addressing substantially similar language. In *Nasdi Holdings, LLC v. North American Leasing, Inc.*,[61] the Court of Chancery addressed an indemnification provision that provided that one party to the contract shall indemnify the other party "from and against any or all Losses" subject to certain limitations.[62] In a general definitions section, the agreement defined "Losses" to include "reasonable attorney or consultant fees."[63] The Court of Chancery noted that the party seeking reimbursement of attorneys' fees failed to rely on any fee-shifting specific language in the indemnification provision, other than the general definition of "Losses" elsewhere in the agreement.[64] In denying the request for reimbursement, the Court of Chancery found that the

---

[58] *Id*. Art. 1.
[59] *Id*. § 7.5(a).
[60] *Id*.
[61] 2020 WL 1865747 (Del. Ch. Apr. 13, 2020)
[62] *Id*. at *6.
[63] *Id*.
[64] *Id*.

13

indemnification provision did not contain a "clear and unequivocal articulation" of the intent to require reimbursement for attorneys' fees incurred through first-party actions.[65]

Finally, the Court notes that the parties knew how to draft explicit fee-shifting language in other provisions which further demonstrates that that the parties did not intend for Losses to encompass fee-shifting on first-party claims. To uphold the parties' intentions, the Court "must construe the agreement as a whole, giving effect to all provisions therein."[66] If the parties use fee-shifting language in one section of the agreement and fail to include such language in another, it "indicates a lack of intent to create a clear and unequivocal agreement to shift fees in first-party actions."[67] The SPA includes fee-shifting language in SPA Section 8.2(c). That section provides that the "Buyer shall pay to the Seller Parties their costs and expenses (including attorneys' fees) in connection" with any suit the Heyman Defendants commence to recover a termination fee.[68] SPA Section 8.2(c) shows a clear and unequivocal intent to shift fees that is not present under the definition of Losses.

Ashland contends that the case law supports the award of attorneys' fees in the presence of a hold harmless clause and a broad indemnity clause.[69] As set out in *Clean Harbors, Inc. v. Union Pacific Corporation*,[70] however, this Court noted that it is proper to award such fees unless there is a provision that "evinces an intent to limit the attorneys' fees to specific scenarios."[71] The SPA has such a provision—SPA Section 8.2(c). SPA Section 8.2 talks to the "Effect of Termination." Section 8.2(b) requires Ashland to pay a fee if Ashland terminates the

---

[65] *Id.*
[66] *GMG Capital Investments, LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012).
[67] *Deere & Co. v. Exelon Generation Acquisitions, LLC,* 2016 WL 6879525, at *2 (Del. Super. Nov. 22, 2016).
[68] SPA § 8.2(c).
[69] *See, e.g., Delle Donne & Assoc., LLP v. Millar Elev. Serv. Co.*, 840 A.2d 1244, 1256 (Del. 2004); *Pike Creek Chiropractic Center, P.A. v. Robinson*, 637 A.2d 418 (Del. 1994).
[70] 2017 WL 5606953, at *6-8 (Nov. 15, 2017).
[71] *Id.*, at *7 (reaching conclusion after survey of case law on fee shifting provisions).

14

agreement under Section 8.1(f).[72]  SPA Section 8.2(c) addresses fee-shifting between Ashland and the Heyman Defendants if there has been a termination and the Heyman Defendant need to bring suit to collect the fee.  There would be no need to include SPA Section 8.2(c) if the Court agreed with Ashland's argument.  SPA Section 8.2(c) demonstrates that the parties knew how to draft specific language to covers fee-shifting.

No facts remain in dispute regarding the SPA indemnification provisions, Section 4(a) of Schedule 5.19 and SPA Section 7.2(b). The contract language itself controls Ashland's entitlement to attorneys' fees.  Therefore, the Court grants the Heyman Defendants' motion for summary judgment and denies Ashland's motion for summary judgment.

## VI.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Heyman Motion on the claim for attorneys' fees and **DENIES** the Ashland Motion.

Dated: November 10, 2020
Wilmington, Delaware


*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc: File&ServeXpress

---

[72] *Id*. at § 8.2(c).

15